Norman A. Stiller, J.
There appear to be three important substantive questions presented in this proceeding to review an order of the Town Board of the Town of Carlton, Orleans County, creating a town-wide water district and assessing the capital costs thereof against the various parcels of real property in the town on a so-called benefit basis.
The first of these questions has to do with allowing resident nonproperty owners to participate in the permissive referendum conducted in the town on April 29, 1971. At the suggestion of the town’s bond counsel, the notice of the special election specified that any person should be entitled to vote who was a qualified elector of the town residing in the proposed water district, whether or not such person was the owner of taxable real property. This addendum contradicted the provisions of subdivision 3 of section 209-e of the Town Law which require that the proposition establishing the district and authorizing the construction of the improvement ‘ ‘ be approved by the affirmative vote of a majority of the owners of taxable real property situate in the proposed district * * * voting on such proposition.” (Emphasis supplied.) It appears that a total of 1,348 ballots were cast in the special election at which the proposition was approved 713 to 586 with 49 void ballots. The petitioners allege that over 750 persons were permitted to vote in the referendum although their names were not contained in the latest completed assessment rolls of the town. While the exact number of allegedly unqualified voters who participated in the election is not conceded by the respondents, the question as to the legality of the election is created by the admitted deviation from the provisions of section 209-e.
The extension of the franchise to those who were not owners of real property is said to have been required by certain recent decisions of the United States Supreme Court, the earliest of which was decided in 1969. In Kramer v. Union School Dist. (395 U. S. 621 [1969]), the court held that New York State could not restrict the vote in school district elections to owners and lessees of real property and parents of school children in the absence of some compelling State interest to be promoted by the exclusion of otherwise qualified voters. That holding, premised upon the guarantee of the equal protection clause of the Fourteenth Amendment, was extended in Cipriano v. City of Houma (395 U. S. 701 [1969]) to elections for the approval of revenue bonds to finance local improvements *3 so as to invalidate a statute of the State of Louisiana which restricted the franchise in municipal bond referenda to 1 ‘ property taxpayers qualified to vote ’ ’.
Finally, in Phoenix v. Kolodziejski (399 TJ. S. 204 [1970]) the court was faced with a property owner restriction in a referendum to approve the issuance of general obligation bonds as well as certain revenue bonds by the City of Phoenix, Arizona. The general obligation bonds were to be issued to finance various municipal improvements to the sewer system, parks and playgrounds, police and public safety buildings and libraries and were to be retired through the levy of real property taxes although other revenues could be applied to their repayment. (It was stipulated by the parties that more than half of the debt service requirement for these bonds would come from revenues other than those produced by real property taxes.) Arizona constitutional and statutory provisions restricted participation in such elections to otherwise qualified voters who were also property taxpayers. While the court recognized a possible distinction between the revenue bonds involved in Cipriano which were to be retired exclusively from the earnings of municipally operated public utilities and the general obligation bonds to be issued by the City of Phoenix which, in the default of any other sources of municipal revenue, were expressly payable by a levy upon the taxable real property of the city, it refused to regard this as sufficient justification for the restricting of the franchise to voters owning taxable real property. The majority opinion of Mr. Justice White points out that while property taxes are paid initially by property owners, a significant portion of ultimate burden is passed on to tenants and lessees or is recovered by businesses in the prices of goods and services purchased by property owners and nonproperty owners alike. Perhaps anticipating a situation similar to that presented here, the majority noted that “ the justification for restricting the franchise to the property owners would seem to be strongest in the case of a municipality which, unlike Phoenix, looks only to property tax revenues for servicing general obligation bonds. But even in such a case the justification would be insufficient. ’ ’ (p. 210). Whatever possibility remained after Cipriano that the franchise could be restricted to qualified voters owning taxable real property so long as the bonds were to be retired by revenues collected partially or even wholly by means of real property taxes must be held to have disappeared with the decision in City of Phoenix. The unreported decision of Justice Easton in Matter of Bedient (Sup. Ct., Monroe County, *4 1969) upholding subdivision 3 of section 209-e of the Town Law against the same attack made here preceded the decision in City of Phoenix and quite understandably distinguished the Kramer and Cipriano cases in favor of validating a State statute which reflected a long-established State policy restricting the franchise to real property owners in such elections.
To the extent that subdivision 3 of section 209-e of the Town Law restricts participation in the referendum to ‘1 owners of taxable real property situate in the proposed district or proposed extended district as shown upon the latest completed assessment-roll of the town ’ ’, it must be declared to be unconstitutional and therefore that participation in the special election of April 29, 1971 by those qualified voters who were not owners of taxable real property was lawful.
The second question which concerns the court is the action of the Town Board in establishing a water district coterminous with the town boundaries and in designating three classifications of benefited properties with each parcel in a class assessed the same amount annually to defray the capital costs of the improvement. Since there is no allegation that any of the petitioners fall into any class but that denominated ‘ ‘ directly benefited ”, we are limited to considering the assessments proposed to be made against such properties except that the entire scheme would of necessity fall if those assessments were found to be arbitrary or otherwise invalid.
Initially, the boundaries of the proposed district were tentatively established by the Town Board pursuant to section 209-d of the Town Law prior to the public hearing which was held also pursuant to that section. Following the hearing, the board made the determinations required by subdivision 1 of section 209 of the Town Law which included the two now challenged, i.e., that all property and property owners within the proposed district are benefited thereby and that all property and property owners benefited are included within the limits of the proposed districts.
The petitioners complain that the fixing of district boundaries so as to encompass the entire township thereby including properties neither directly nor indirectly benefited by the improvement enabled persons to vote who had no real financial interest in the creation of the district and to that extent diluted the impact of the petitioners’ vote all in violation of the Equal Protection Clause of the Fourteenth Amendment.
This argument proceeds upon the assumption that owners of lands not directly benefited by the improvement would vote in favor of its installation even though they would be assessed, *5 however modestly, to defray the costs thereof. The acceptance of that doubtful hypothesis would, however, lead to the conclusion that such owners foresaw a benefit to themselves and their lands, perhaps later rather than sooner, but substantial enough to merit their support even though the extension of the lines to their lands would surely increase their own assessments.
The finding by the Town Board that all lands in the town would be benefited by the improvements is generally held to be the product of the legislative power (Gaynor v. Marohn, 268 N. Y. 417 [1935]; Valley Farms Co. v. City of Yonkers, 193 App. Div. 433 [2d Dept.], affd. sub nom. Valley Farms Co. v. County of Westchester, 261 U. S. 155 [1923]) which will not be interfered with unless it is shown to be so arbitrary or palpably unjust as to amount to a confiscation of property. (Gaynor v. Marohn, supra; People ex rel. Schick v. Marvin, 249 App. Div. 293, affd. 275 N. Y. 587 [1937]). That does not appear here, but in any event these petitioners are not in a position to raise that question since it does not appear that they own lands in the indirectly benefited category. Basically, the Fourteenth Amendment argument rests on the fact that the votes of the property owners are not weighted in accordance with the benefit their lands may receive or more precisely, in accordance with the tax burdens each will immediately shoulder when the improvement is completed but that sort of imbalance is inherent when the owners of all benefited lands are entitled to vote upon the installation of a public improvement. The various parcels of land will of course be benefited in differing degrees but these variances should be reflected in the assessments made upon each.
This brings us to the third claim by the petitioners, that the flat rate or unit plan of assessment proposed by the board is arbitrary, capricious and grossly inequitable. As the petitioners point out, the order establishing the water district provides that “the cost of said improvements shall be (met) by the issuance of not exceeding $1,600,000 serial bonds of said Town, maturing in annual installments over a period not exceeding forty years, payable in the first instance from a levy upon the several lots and parcels of land within said extension which the Town Board shall determine and specify to be especially benefited by said improvements in just proportion to the amount of benefit which said improvements shall convey upon the same. ’ ’ That was the method of financing presented in the April referendum and approved by the Comptroller in his order of August 31, 1971. However, there is nothing in the Town Board’s order, under review here, which commits the board *6 to the use of a flat rate or unit plan of assessment although that method was proposed to the board by its engineers in their preliminary report. The board is, of course, bound to spread the total cost of the improvement, when that is known, upon the lots and parcels of land within the boundaries of the district in proportion to the benefit which the improvement shall have conferred on each such lot and parcel (Town Law, §§ 236, 237), but that has not happened yet. When it has, and the assessment roll is completed,' the petitioners may be heard as to their objections (Town Law, § 239) and, if aggrieved, may commence a proceeding to review the decision or action of the board as provided by section 246 of the Town Law. At the moment, the petitioners ’ complaint is premature since there is no determination with respect to benefit assessments which this court can review.
While the question of the actual dollar amounts of the benefit assessments is not presented, there is a related question raised by the petitioners that merits comment. It is claimed by them that the installation of water mains will be of no benefit to their properties since they now have wells from which they procure their domestic water requirements. It has been held repeatedly that although a given property owner has made private arrangements to supply himself with the services offered by a special improvement district, still his lands may properly be assessed for the benefit which the district service confers. (O’Flynn v. Village of East Rochester, 292 N. Y. 156 [1944]; Matter of Brewster-Mill Park Realty v. Town Bd. of North Elba, 17 A D 2d 467 [3d Dept., 1962]; Matter of Koston v. Town of Newburgh, 59 Misc 2d 540 [Sup. Ct., Orange County, 1969]; Matter of Amundson Ave. Sewer, City of Mt. Vernon, 24 Misc 2d 618 [Sup. Ct., Westchester Co., 1959]). As the Court of Appeals observed in Matter of City of New York (Juniper Ave.) (233 N. Y. 387, 392): “ Whether or not a particular parcel of land has been benefited by a particular improvement is ordinarily a question of fact. The test is not whether as now used by its present owner any advantage is received but whether its general value has been enhanced.” It would be impossible to say, given the well-known conditions of pollution, generally of both surface and underground streams, that the provision of an adequate supply of potable water would not constitute a benefit to the lands served.
All that remains is the claim by petitioners that certain procedural omissions are fatal to the board’s order establishing the district. The first is founded on the failure of the map of the proposed district to show the location of hydrants as *7 required by section 209-c of the Town Law. The map as filed does not, in fact, show the location or the number of hydrants proposed but does bear the note “Hydrants provided every 60(y to 1000' ”, It is possible that from this information one could estimate roughly the number of hydrants anticipated although their location would be speculative to say the least. While it seems that it would be helpful if such plans did show with more precision the location of hydrants, it must be recognized that such locations would be likely influenced greatly by physical conditions encountered which accounts for the 400-foot variance allowed for by the plan. In any event, that discrepancy does not seem to be of such importance as to rise to jurisdictional status, particularly since it is a matter which could have been presented at the public hearing conducted by the board pursuant to section 209-d of the Town Law. Since there is no claim here that this was in fact brought to the board’s attention at a time when the plan could have been amended to be more specific and since there does not appear to be any prejudice occasioned to the petitioners by reason thereof, the objection should be rejected as inconsequential.
The second alleged procedural defect is the claimed failure of the board or of the Department of Audit and Control to timely notify the Board of Supervisors of the County of Orleans of the application made by the Town Board for permission of the New York State Comptroller to establish the proposed water district. Subdivision 5 of section 209-f of the Town Law provides that when such an application is filed with the Department of Audit and Control, the Comptroller shall, within five days thereafter, give notice thereof to the board of supervisors of the county in which the proposed district or extension is located by filing with the clerk of such board a copy of the application and within 15 days of such filing, the board of supervisors may file written objections [to establishment of the district] in the office of the Department of Audit and Control. It appears that the application for permission to establish this water district was executed by the Town Supervisor and forwarded to the Department of Audit and Control on March 19, 1971. The petitioners allege, however, that a copy of the application was not filed with the Clerk of the Orleans County Board of Supervisors until June 3, 1971. The order of the Comptroller granting permission to the town to establish the proposed water district is dated August 31, 1971 and recites that notice of the application ‘1 has been duly given to the Board of Supervisors of Orleans County, New York, by the State Comptroller in the manner prescribed by the Town *8 Law, section 209 f Assuming the truth of the allegation that a copy of the application to the Comptroller was not filed with the Clerk of the Board of Supervisors until June 3, 1971, the Board of Supervisors still had ample time during which it could have objected to creation of the district and the record does not show that any objection, timely or otherwise, was made. We may assume that the Comptroller delayed giving notice to the Board of Supervisors until after the results of the April 29 special election was certified, pursuant to subdivision 4 of section 209-e of the Town Law, since his consideration of the application is expressly required to take place after the filing of that certificate (Town Law, § 209-f, subd. 5). In any event, the late filing prejudiced no party in interest and should be viewed as a harmless irregularity.
There is an allegation that ‘ ‘ many persons, including some of the petitioners, were denied the right to vote at said special election even though they were the owners of taxable real property within said Town; ’ ’. This is denied in the answer but perhaps it should be cleared up by a hearing at a Trial Term of this court. Unless such question is resolved in favor of the petitioners, the order of the Town Board of September 8, 1971 establishing the water district of the Town of Carlton in Orleans County adopted pursuant to article 12-A of the Town Law is confirmed.