John C. Marbach, J.
Petitioners have commenced these proceedings pursuant to article 22 of the Village Law, seeking to have declared invalid assessments levied against them by respondents, which assessments purport to defray a portion of the cost of the village parking structure (hereinafter referred to as the structure).
When the petitions and answers were originally submitted to this court, the court treated the matters as motions for summary judgment by all of the parties and in accordance therewith, decided certain of the procedural issues in an opinion dated February 6, 1975. We further, however, ordered an immediate trial pursuant to CPLR 7804 (subd [h]) on the issue of legislative purpose; i.e., whether the assessment of petitioners and the creation of the benefit district by the village board of trustees was done on a rational basis. Trial was held on February 20 and 21, 1975.
At trial, although recognizing that petitioners had the burden of proof on the issue to be tried, respondents nevertheless went forward with the proof in the form of testimony and documentary exhibits purporting to support the action of the village board of trustees. The only witness testifying was Mr. Lowell Tooley, the Village Manager of Scarsdale since 1961. The Mayor of Scarsdale, Mr. Murray Steyer, who was a member of the village board during the period of time in question, was present in court but did not testify. Numerous documents in the form of staff studies, advisory committee reports and reports of architects and plans were introduced by respondents.
Although the petitions, returns, affidavits and trial evidence are voluminous, the facts necessary for determination of the issue tried may be stated briefly. The structure with spaces for approximately 500 cars was opened to the public in January of 1973. Pursuant to a formula arrived at by the village board in 1971 and formally adopted in 1974, a benefit district *624 consisting of some 50 commercial properties, including those of petitioners, was created. The benefit district was assessed a total of some $617,000, purporting to represent Vs of the cost of the structure, the remaining % to be absorbed by the village as a whole. It has been the position of the respondents throughout these proceedings that the legislative purpose in building the structure was to create additional parking for shoppers and business men of the business district of Scars-dale, thus benefiting the business district in the carrying out of the various commercial enterprises. Throughout the discussions of the village board which led up to the construction of the structure and the assessment therefor, there was no discussion specifically as to why the business district was deemed especially benefited to the exclusion of the remainder of the Village. Mr. Tooley testified that the village board relied primarily on the so-called "Clark Report” and the "Kinsey Report” in determining the nature of the construction and financing of the structure. He further testified that these reports and the discussions by the board did not contain recommendations for additional commuter parking, it being the announced purpose of the structure to provide parking for other than commuters and in so doing, to create additional short term parking outside of the structure for shoppers and others having business in the business district. It is obvious to this court, however, that the structure as completed and utilized contains primarily commuter parking and thus represents a substantial benefit to the commuters of the village and indeed to commuters from outside of the village.
Of the approximately 500 spaces in the structure, some 350 consist of long-term parking meters with the rest allocated to permit parking. Every meter in the structure is capable of being fed with coins so as to register up to 12 hours at one time. Although the village never conducted a use survey of the structure after its opening,* this court finds from the evidence adduced that the structure is heavily used by commuters. Despite respondents’ contention that the structure was not intended as a benefit to the village’s commuters, several of the respondents’ own exhibits belie that contention. Respondents’ Exhibits M and O, which are fact sheets published by the village for the information of the village residents, clearly indicate that the village contemplated the use of *625 the structure by commuters. It was erected immediately adjacent to the railroad tracks. Indeed, exhibit M even contains instructions as to how one reaches the railroad platforms from the parking area and there is direct covered access to those platforms. That the structure benefits commuters and was constructed with them in mind is not surprising in view of certain developments which occurred during the year 1970. At that time, the parking authority of the neighboring hamlet of Hartsdale considered a proposal to ban Scarsdale commuters from use of the Hartsdale station. This proposal led to meetings between Scarsdale authorities and the Hartsdale Parking Authority, as a result of which an agreement was reached whereby Scarsdale commuters continued to be allowed to park at the Hartsdale station, while Scarsdale completed its parking structure and whereby Scarsdale promised that upon completion of the structure, commuters and other parkers from outside of the village would be allowed access thereto.
Mr. Tooley in his testimony conceded that another factor considered by the board in its determination to create the structure was continuous complaints by residents of the residential areas surrounding the business district concerning parking and traffic congestion on residential streets. It cannot be seriously disputed that the creation of the structure inured to the benefit of these residents.
The method by which the amount of the assessment was arrived at by the village board is also worthy of scrutiny. The amount of $617,000 purports to be Vs of the cost of construction of the structure. Mr. Tooley, in his testimony, conceded that in fact the amount of $617,000 represents the purported short fall in revenues from the operation of the structure projected over a period of years. In other words, the assessment represents the amortization of and interest on the borrowing to cover the cost of construction, plus operating expenses and maintenance, less the projected revenue from the parking meters and sale of permits, projected over a period of years. It is obvious then that the % of the cost of the structure "to be absorbed by the Village of Scarsdale as a whole” was not in fact to be absorbed by the village, but was in fact to be defrayed by the users of the structure and the Vs imposed on the special benefit district is the capitalization of the operating deficit.
This court is cognizant that the decision of the village board to create the structure and a benefit district to defray the cost *626 thereof is a legislative act which carries with it a strong presumption of validity. This is not to say, however, that assessments by a local legislative body can escape judicial review where the assessment is wholly arbitrary to the extent that the property of those assessed was confiscated in violation of due process of law (People ex rel. Prosperity Co. v Marvin, 259 App Div 204; Valley Farms Co. of Yonkers v City of Yonkers, 193 App Div 433, affd 231 NY 558, affd sub nom. Valley Farms Co. v Westchester, 261 US 155).
This court holds that the assessment against petitioners’ property is illegal at least in part due to the fact that the assessment in fact defrays operating expenses and maintenance of the structure, which expenses are not properly included in an assessment for a municipal parking facility (28 Opns St Comp,. 1972, p 216). Beyond this holding, however, this court is constrained to hold that the assessment against the business district and these petitioners in particular is devoid of a rational basis on this record and cannot be sustained. Petitioners’ contentions that due to the present use of their properties they are not in fact benefited by the structure have been given no weight in arriving at the above stated conclusion. In determining the validity of the assessment actual benefit to present use of a particular property is not the criteria, rather the test is whether as a result of the improvement there would be an increase in the general value of the property, which increase in value could be realized at some future time (Matter of City of New York [Juniper Ave.], 233 NY 387). Had the village board in this case made a determination of an increase in general value of the property in the business district, such a finding might sustain the assessment made. The formula adopted, however, has nothing to do with increase in general value of property, but rather is based on the variable happenstance of income derived from the use of the structure. Under the formula, the assessment upon petitioners’ property would have approached zero, had parking fees been substantially raised, whereas the assessment would have had to be increased nearly threefold if the village had decided not to charge for parking at all. The assessment adopted, having nothing to do with an increase in the general value of petitioners’ property, is illegal and cannot stand.
It is obvious to this court on the record before it that the *627 business district was not any more benefited by the erection of the structure than commuters, residents surrounding the business district, or the village as a whole. This court deems the building of the structure entirely appropriate and an obvious benefit to the Village of Scarsdale. The decision by the village board to create the structure was a laudible legislative act. The court concludes, however, that to single out the business district, including these petitioners, for assessment as opposed to defraying the cost of the structure from contributions from all others who were in fact benefited is arbitrary and irrational. The assessment against the business district is a large one and upon this record the benefit to this district is demonstrably minimal. Indeed, when asked to point out on the village parking map what parking spaces were converted to short term as a result of the structure’s completion, Mr. Tooley could find only 13 such parking spaces. This court cannot perceive that the local legislators in this instance could view the assessment district created as reasonable and proper without doing violence to common sense (Matter of City of New York, 190 NY 350). The erection of the parking structure was legal and rational as a solution to multiple problems, but there is no rational basis for the imposition upon this district of this assessment.
Accordingly, this court holds that the creation of the benefit district herein and the assessments levied upon these petitioners were arbitrary and irrational and confiscatory of petitioner’s property. The assessments are hereby declared illegal and void and any of petitioners’ funds derived by respondents as a result of the assessment of July, 1974 must be returned to petitioners. Had the court not reached the conclusion that the assessments against petitioners were void in their entirety, it would nevertheless have been constrained to remit the matter to the village board to recompute the amounts of the assessments since the board erroneously excluded village-owned proprietary property from the benefit district (Hassan v City of Rochester, 67 NY 528) and illegally considered assessed valuation in arriving at the various assessments (Village Law, § 22-2200; Matter of Eckhardt v Zion, 12 Misc 2d 344, affd 6 AD2d 885).
Submit judgment on notice in accordance with this decision and in accordance with the decision of February 6, 1975, which judgment will include decretal paragraphs as to the procedural issues decided in that prior opinion.

 In fact, no testimony was adduced which indicated that traffic flow and parking were improved in the business district as a result of the opening of the structure.