In the Matter of SCARSDALE CHATEAUX RTN, Respondent, v MURRAY STEYER et al., Constituting the Board of Trustees of the Village of Scarsdale, Appellants. (And Seven Other Proceedings.)—In proceedings to review certain special assessments levied against petitioners' properties in the Village of Scarsdale, the mayor and the board of trustees of the village appeal, as limited by their notice of appeal and brief, from so much of a judgment of the Supreme Court, Westchester County, dated May 14, 1975, as, after a hearing, (1) adjudged that the special assessments in question

were illegal and void, (2) ordered appellants to return to petitioners all sums which may have been paid on account of the special assessments and (3) awarded costs and disbursements to petitioners against appellants. Judgment reversed insofar as appealed from, on the law and the facts, without costs or disbursements, and proceedings dismissed on the merits. It is well settled that one who attacks a local tax assessment has a heavy burden of proof as to its invalidity. The petitioner must prove either that the legislative body lacked jurisdiction or that its action was so flagrantly baseless as to amount to a confiscation of his property *(Genet v City of Brooklyn,* 99 NY 296, 306; *Valley Farms Co. of Yonkers v City of Yonkers,* 193 App Div 433, affd 231 NY 558; *Matter of Wright v Town Bd. of Town of Carlton,* 70 Misc 2d 1, 5, mod on other grounds 41 AD2d 290, affd 33 NY2d 977). If any state of facts is known, or may reasonably be assumed, which justifies the legislative enactment, the court's power of inquiry ends *(Lincoln Bldg. Assoc. v Barr,* 1 NY2d 413, 415; *De Sena v Gulde,* 24 AD2d 165, 169). Here the board of trustees reached its conclusion that the properties assessed were benefited by the construction of certain parking facilities only after investigation, consideration of reports, surveys and analyses of the problem and in the light of its members' own specialized knowledge of the local conditions. Petitioners argue, and the Special Term found, that the completed parking structure was essentially for the benefit of commuters. The record, however, reveals that there is no proof as to who in fact the ultimate users of the newly constructed parking facility are to be. This failure of proof by petitioners is crucial. Furthermore, even if the erection of the parking garage did no more than furnish a place for commuters to park, it is conceivable that in so doing it opened up parking facilities which the commuters had used and made those facilities available for shoppers and similar visitors to the business district, i.e., the assessed properties. Petitioners argue for the first time on this appeal that the assessments were *ultra vires* in that the Village Law did not empower the board to make the assessments in question. Both subdivision 2 of section 280 of the former Village Law and subdivision 2 of section 22-2200 of the present Village Law provide that *"When the cost of any such local improvements has been determined* the board shall apportion and assess the part of the expense to be raised by local assessments upon the lands in such assessment district, according to frontage, area, or otherwise, as the board may determine during the proceedings to be just and equitable" (emphasis supplied). It is argued, in reliance on the emphasized language of the statute, that the apportionment (based in part on assessed valuation) could not legally have been made in 1972 because the cost of the improvement had not yet been determined. The critical facts involved in this argument are, briefly, that on July 13, 1971 the board authorized construction of the parking facility, passed a bond resolution and authorized the acquisition of lands; that on November 28, 1972 the board resolved to issue 20-year bonds and determined to apportion the assessment among the affected properties based 50% on their relative area and 50% on their assessed valuations; that on September 1, 1973 section 280 of the Village Law was repealed and section 22-2200 became effective; that the new section omits assessed valuation as one of the methods of apportioning the total amount of a special assessment among the affected properties; and that on June 26, 1974 the board determined the actual cost of the parking facility and resolved to apportion one third of that cost among the allegedly benefited properties. The apportionment was made 50% on the basis of relative area and 50% on the basis of relative assessed valuation. While the board concedes that no apportionment

of the part of the dollar amounts to be raised by local assessment could possibly have been made, legally or otherwise, until after the cost to be assessed had been determined, it properly points out that the statute (former Village Law, § 280) did not provide in 1972, and does not now provide, by way of mandate or direction, that the formula for the apportionment of the portion of the cost to be raised by local assessment shall not be determined until after the cost has been ascertained. It provides that the formula may be such as the board may determine "during the proceedings to be just and equitable" (former Village Law, § 280; Village Law, § 22-2200). The proceedings in question were begun in 1971 and completed in 1974; the formula was determined and made applicable in 1972, when the statute then in effect authorized assessments based in whole or part on assessed value of the benefited properties. Accordingly, the assessments levied against petitioners' properties were legal. The other arguments raised by petitioners have been considered and found to be without merit. Cohalan, Acting P. J., Margett, Damiani, Rabin and Shapiro, JJ., concur. [81 Misc 2d 622.]