## Town of Cheektowaga et al., Appellants, v Niagara Frontier Transportation Authority, Respondent.

Fourth Department, July 9, 1981

#### APPEARANCES OF COUNSEL

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Evan E. James, Seymour L. Schuller* and *William M. Feigenbaum* of counsel), for appellants.

*William E. Straub (David M. Coffey, Claude A. Joerg* and *Robert E. Pearman* of counsel), for respondent.

#### OPINION OF THE COURT

HANCOCK, JR., J.

Plaintiffs seek a determination that they may collect special sewer district assessments from defendant Niagara

Frontier Transportation Authority on land within the Town of Cheektowaga and owned by the authority on which it operates the Greater Buffalo International Airport. Sometime prior to 1979 plaintiff town, pursuant to article 12 of the Town Law, established a sewer district which included defendant's airport property. On January 15, 1980 the town sent to defendant invoices totaling $362,994.47 representing special assessments charged against the airport facility pursuant to sections 202 and 202-a of the Town Law as properties found by the town to be benefited by the improvements. When defendant refused to pay, plaintiffs commenced this action for a declaratory judgment and collection of the charges. Special Term declared that defendant was "exempt from the payment of special assessments, taxes and ad valorem levies," and, without deciding whether the sewer charges were special assessments or ad valorem levies, held that defendant was exempt from payment thereof. The court denied plaintiffs' motion for summary judgment and granted defendant's cross motion for summary judgment. Plaintiffs appeal. There should be an affirmance, inasmuch as the sewer district charges are assessments which, by express provision of the Niagara Frontier Transportation Act (Public Authorities Law, tit 13), defendant is not required to pay (Public Authorities Law, § 1299-o, as added by L 1967, ch 717).

By specific terms of sections 400 and 412 of the Real Property Tax Law, the real property of the Niagara Frontier Transportation Authority is entitled only to such exemptions as may be granted to it under the Public Authorities Law.[1] Accordingly, we examine the pertinent part of the Public Authorities Law (§ 1299-o) governing exemptions of the Niagara Frontier Transportation Authority which states: "It is hereby found, determined and declared that the creation of the authority and the carrying out of its purposes is in all respects for the benefit of the people

1. Section 400 of the Real Property Tax Law, providing that all real property except property with specified uses is subject to service charges, special ad valorem levies and special assessments, further provides that "this section shall not apply to the real property of * * * the Niagara Frontier Transportation Authority". Section 412 of the Real Property Tax Law provides: "Real property owned by public authorities enumerated in the public authorities law shall be entitled to such exemption as may be provided therein."

of the state of New York and for the improvement of their health, welfare and prosperity and is a public purpose, and that the authority will be performing an essential governmental function in the exercise of the powers conferred upon it by this title. Without limiting the generality of the following provisions of this section, property owned by the authority, property leased by the authority and used for transportation purposes, and property used for transportation purposes by or for the benefit of the authority exclusively * * * shall all be *exempt from taxation and special ad valorem levies. The authority shall be required to pay no fees, taxes or assessments*, whether state or local, including but not limited to fees, taxes or assessments on real estate, franchise taxes, sales taxes or other excise taxes, upon any of its property, or upon the use thereof, or upon its activities in the operation and maintenance of its facilities or on any fares, tolls, rentals, rates, charges or other fees, revenues or other income received by the authority * * * The terms 'taxation' and 'special ad valorem levy' shall have the same meanings as defined in section one hundred two of the real property tax law". (Emphasis added.)

Plaintiffs raise two contentions: first, that the charges are not ad valorem levies which would unquestionably be exempt under the second sentence of section 1299-o, and, second, that they are special assessments for which no exemption is provided.

We agree that the charges are not special ad valorem levies. It is undisputed that the sewer charges are based upon a "tripartite" calculation—only part of which relates to assessed valuation of the property—consisting of: a direct "user charge" based upon measured water consumption; a charge of $13.367196 per $1,000 of assessed valuation; and a charge of $5.143593 per 1,000 square feet of land area. Defendant argues that because a portion of the charge is not based upon measured water consumption but on assessed valuation and land area, the charge is not proportional to the benefit received by the property and thus is not a special assessment (defined in Real Property Tax Law, § 102, subd 15, as "a charge imposed upon benefited real property in proportion to the benefit received

by such property to defray the cost * * * of a special district improvement or service") but a special ad valorem levy (defined in Real Property Tax Law, § 102, subd 14, as "a charge imposed upon benefited real property in the same manner and at the same time as taxes for municipal purposes to defray the cost * * * of a special district improvement or service"). *Watergate II Apts. v Buffalo Sewer Auth.* (46 NY2d 52) answers defendant's argument; there, the court held that the allocation by the Buffalo Sewer Authority of charges based on a combination of the amount of water consumed and the assessed value of real estate should not be regarded as taxation. The court noted that inasmuch as the benefit to the present and future health and safety of the public provided by the authority was much greater than the measure of actual water use by each property owner, the allocation of charges bore a "direct relationship to the broader reality of the services and benefits actually rendered to property owners as a whole" *(Watergate II Apts. v Buffalo Sewer Auth., supra, p 61).* Similarly, the tripartite calculation of charges here bears a "direct relationship" to the benefit to the real property and thus the charges are "special assessments".

We turn to plaintiffs' argument that although the third sentence in section 1299-o of the Public Authorities Law contains the words: "The authority shall be required to pay no fees, taxes or assessments," clearly a provision granting express exemption for assessments generally, the statute does not effect an exemption for the particular category of assessment in question, "special assessments", because it does not exempt "special assessments" in those precise words. There appears to be no question that the word "assessments"[2] as used in the quoted provision is a

2. It is clear from the use of the word "assessments", in the same context as the words "fees" and "taxes" as something which, but for the exemption, the authority would be "required to pay", that "assessments" is used to mean a charge of a special payment or fee (see third definition of "assess" in the American Heritage Dictionary of the English Language [1976]). That the Legislature did not intend the word "assessments" in section 1299-o to have the meaning of the term as defined in subdivision 2 of section 102 of the Real Property Tax Law—"a determination made by assessors of * * * the valuation of real property"—is evident not only from the plain meaning of the statute which is concerned not with valuation of property but with exemptions from

generic term meaning charges like fees and taxes which, but for the exemption, the authority would be "required to pay" (Public Authorities Law, § 1299-o). Concededly a "special assessment" (also called "special benefit assessment" and "local assessment"[3]) is one particular type of charge or assessment. The precise question is whether the Legislature intended in section 1299-o to include this particular category within the general term "assessments". For the reasons which follow we hold that it did so intend.

Our interpretation of "assessments" as a generic term encompassing "special assessments" is supported by the general rule of statutory construction that "where the Legislature in enacting a statute utilized general terms, and did not, either expressly or by implication, limit their operation, the court will not impose any limitation." (McKinney's Cons Laws of NY, Book I, Statutes, § 114.) There is nothing in section 1299-o suggesting an intention that the word "assessments" should be limited so as to exclude "special assessments" or any other particular type of assessments. Indeed, the logical extension of plaintiff's argument that no exemption for "special assessments" could have been intended because that particular type of assessment is not specifically mentioned in the statute leads to the exclusion of all types of assessments not mentioned and to the anomalous result that the general term "assessments" includes no categories and can have no effect. Such a reading would be contrary to the established canons of statutory construction that meaning and effect should be given to all provisions of a statute and that a construction which would lead to an absurd result should be avoided (McKinney's Cons Laws of NY, Book I, Statutes, § 98, subd a; § 145).

The conclusion that the Legislature meant the word

---

payment of various taxes, fees and charges, but also from the fact that while the Legislature specifically provided in section 1299-o that "the terms 'taxation' and 'special ad valorem levy' shall have the same meanings as defined in section one hundred two of the real property tax law," it did not so provide with respect to the term "assessment".

3. See, e.g., Town Law, § 202, subds 2, 4; § 231; Village Law, §§ 5-516, 5-518; *Matter of Scarsdale Chateaux RTN v Steyer*, 53 AD2d 672, affd 41 NY2d 1043; *Rector, Churchwardens & Vestrymen of Christ Church, Bronxville v Town of Eastchester*, 197 Misc 943.

"assessments" in section 1299-o of the Public Authorities Law[4] to be understood as a general term referring to or including special assessments is reinforced by the Legislature's use of the unmodified term "assessments" in related statutes passed prior and subsequent to the adoption of section 1299-o. Generally, when in drafting a statute the Legislature uses a word which it has previously used in a particular manner in another statute on the same subject matter, it is considered to have intended that the word should retain the same meaning (McKinney's Cons Laws of NY, Book I, Statutes, § 236). In the Town Law, enacted in 1932, the Legislature used in section 202 the unmodified word "assessments" where it necessarily meant "special assessments".[5] Similarly, in section 231 of the Town Law[6] the Legislature employed the terms "special assessment" and "assessment" interchangeably.

In laws enacted subsequent to section 1299-o the Legislature continued its use of the word "assessments" as including special assessments. For example, in section 1316 of the Public Authorities Law[7], pertaining to the Capital District Transportation Authority, the exemption for assessments is set forth in the following language: "The authority shall be required to pay no fees, taxes or *assessments*, whether state or local, *except special benefit assessments*

---

4. Public Authorities Law, § 1299-o, as added by L 1967, ch 717.

5. See Town Law, § 202, subds 2, 4, as added by L 1932, ch 634, as amd by L 1934, ch 817; subd 2 as amd by L 1940, ch 629, L 1955, ch 345, L 1980, ch 388; subd 4 as amd by L 1938, ch 634. Subdivision 2 provides that the expense of the establishment of a sewer or drainage district "shall be borne by local assessment upon the several lots and parcels of lands which the town board shall determine and specify to be especially benefited by the improvement * * * in just proportion to the amount of benefit which the improvement shall confer upon the same." Subdivision 4 provides that: "In all districts in which assessments have heretofore been levied upon a benefit basis, assessments shall hereafter be levied upon the same basis." Section 202 has been construed by the courts as applying to benefit assessments (see, e.g., *People ex rel. New York Cent. R. R. Co. v Limburg*, 283 NY 344; *Matter of Haskell v Fisk*, 273 App Div 153, mot for lv to app den 273 App Div 1056). Where a word has been judicially construed, it should be given the same meaning where it is again used by the Legislature in connection with the same subject (see McKinney's Cons Laws of NY, Book I, Statutes, § 75, subd a, pp 162-163). See, also, Town Law, § 202-a, as added by L 1933, ch 645 (amdts omitted).

6. Town Law, § 231, as added by L 1932, ch 634 (amdts omitted).

7. Public Authorities Law, § 1316, as added by L 1970, ch 460, as amd by L 1971, ch 519.

if said property is located in a special benefit district" (emphasis added). (See, also, Public Authorities Law, §§ 1299-qq [pertaining to Rochester-Genesee Regional Transportation Authority] and 1341 [pertaining to Central New York Regional Transportation Authority], both of which contain the same wording as § 1316.[8]) If the term "assessments" were not intended to be used as a generic term which would include special assessments, no exception of special assessments would have been necessary. Also, in the Village Law in sections added after the passage of section 1299-o of the Public Authorities Law the Legislature repeatedly used the words "assessment" and "special assessment" as having the same meaning.[9]

We note that in its declaration in the opening sentence of section 1299-o that "the creation of the authority and the carrying out of its purposes is in all respects for the benefit of the people of the state of New York and for the improvement of their health, welfare and prosperity and is a public purpose, and that the authority will be performing an essential governmental function" the Legislature evinced an intention that the exemptions from fees, taxes, and assessments be broad and inclusive; there is no suggestion that it intended to limit the purpose or operation of section 1299-o of the Public Authorities Law by excluding from the exemption any type of governmentally imposed charge or burden. Our understanding of the legislative purpose is confirmed by the opinion of the Attorney-General of New York which states: "[I]t appears that the Legislature [in section 1299-o] intended to grant to the Authority the broadest possible exemption from the payment of fees, taxes and assessments which the Authority might otherwise be required to pay and that this exemption is not limited to the specific exemptions set forth in the statute." (1973 Atty Gen [Inf Opns] 186.) In another opinion, the Attorney-General concluded: "[R]eal Property owned by the Niagara

---

8. Public Authorities Law, § 1299-qq, as added by L 1969, ch 1124, as amd by L 1971, ch 569; § 1341, as added by L 1970, ch 714.

9. See Village Law, §§ 5-516, 5-518 as added by L 1972, ch 892. See, also, Village Law, §§ 6-622, 11-1108, 14-1416, 22-2200 as added by L 1972, ch 892 (§ 14-1416 as amd by L 1980, ch 388; § 22-2200 as amd by L 1973, ch 976), all of which refer to assessments as benefit assessments.

Frontier Transit Metro System, Inc., a subsidiary corporation of Niagara Frontier Transportation Authority, is not liable for the payment of taxes, *special assessments* and special ad valorem levies to the municipality wherein such property is situated." (1974 Atty Gen [Inf Opns] 174, 176; emphasis added.) Certainly the same result would obtain with respect to the parent, Niagara Frontier Transportation Authority.

For the foregoing reasons, the order should be affirmed.

CARDAMONE, J. P., SIMONS, CALLAHAN and DENMAN, JJ., concur.

Order unanimously affirmed, without costs.