## (July 1, 1971)

■ City of New York et al., Respondents, v. George K. Wyman, as Commissioner of Social Services, et al., Appellants.— Order, Supreme Court, New York County, entered June 2, 1971 (1) annulling the directive of the Commissioner of Social Services dated April 8, 1971 limiting medicaid reimbursement for abortions to those "medically indicated", and (2) directing said Commissioner to continue to provide reimbursement for abortions authorized pursuant to section 125.05 of the Penal Law, affirmed, without costs and without disbursements. We note, at the outset, that while the learned Justice at Special Term devoted considerable space in his opinion in ruling that the action of appellant constituted a violation of the due process and equal protection provisions of the United States Constitution, we find that the resolution of the controversy herein does not directly involve any constitutional problem. The conclusion reached at Special Term is sustained on the following bases: (A) Subdivision 2 of section 365-a of the Social Services Law lends itself to a construction which would include medical care for an "elective abortion" or any abortion not interdicted by law. Indeed the respondent Commissioner so construed it from the time of its adoption to the date of his order. (B) The April 8, 1971 directive is repugnant and contrary to the legislative intent and to the public policy of the State as expressed by the 1970 amendment to the Penal Law liberalizing the abortion law. (C) By denying reimbursement for abortions to indigent women this administrative action will effect the substantial evil which the amendment to the Penal Law was enacted to eliminate. The directive is not only contrary to the legislative intent, it exceeded the respondent's authority and should therefore be annulled as *ultra vires*. (See *Southern S. S. Co.* v. *Labor Bd.*, 316 U. S. 31.) Apart from the foregoing considerations we note also that there was failure to comply with title 42 of the U. S. Code (§ 1396a, subd. [d]) requiring approval of the Secretary of Health, Education and Welfare as a condition precedent to any modification of the State plan to reduce the scope or extent of medical assistance. Concur — Markewich, J. P., Nunez and Tilzer, JJ.; Steuer, J., dissents in the following memorandum: I agree with the majority that the opposition to the relief sought on procedural grounds is not well taken. I differ as to the substantive questions presented. Respondent Commissioner of Social Services issued a directive, dated April 8, 1971, which limits Medicaid reimbursement for abortions to those which are medically indicated. Upon the argument there was a semantically based contention that this directive was so vague that it was meaningless, or that it encompassed every abortion that was performed by a doctor. If it be assumed that the directive is faulty for either of these reasons, it presents no barrier to the plaintiffs and they can be reimbursed for the abortions performed in the past and as yet not compensated for, as well as those to be undertaken. Hence they would not be prejudiced by the respondent's action and the proceeding should have been dismissed. Actually, however, the directive is clear, all parties understood it, and that is why they are here. An abortion is medically indicated when the examining physician determines that it is an advisable procedure to preserve the life or health of the expectant mother. It is not medically indicated when the pregnant woman undergoes it because she does not, for any other reason, desire to bear a child. The sole question is whether the respondent has the power to do what the directive provides, although this question has several facets. The first is whether the procedural limitations in the statute itself preclude it, at least without prior approval. For two reasons it does not. The first is that the provisions of the

Federal law (U. S. Code, tit. 42, § 1396a) require approval only for the purpose of obtaining Federal funds to assist a state program. Even if the directive would have such effect, that has no bearing on the relief sought here. Secondly, what requires approval is a reduction either in the class of persons eligible for assistance or in the scale of payments. The directive here is an interpretation of the State statute and does not affect the eligibility of persons to receive aid or the amount of aid they are entitled to. There is no requirement for approval. We come now to the main question. It is clear that so far as motivation is concerned there are two kinds of abortions — a medical procedure for the preservation of the life or health of the mother, and defined in the Penal Law (§ 125.05) as "Justifiable abortional act", and all others, which have received the popular designation in professional language of "elective". What the respondent seeks to accomplish by the directive is to remove elective abortions from the field of compensable medical aid. What is compensable is defined both in the Social Services Law (§ 365-a, subd. 2) and the rules of the State Board of Social Welfare in virtually the same terms. It covers all medical and related service for conditions that cause "acute suffering, endanger life, result in illness or infirmity, interfere with his capacity for normal activity, or threaten some significant handicap." The medical care to be afforded is that which is "necessary" to effect a cure. Pregnancy is not an abnormal condition, and abortion is not a cure any more than decapitation is a cure for a headache. Both will terminate the condition but neither is necessary for that purpose. To say that an elective abortion is mandated by these sections is to torture both the words and the sense. The remainder of the argument is that if elective abortions are denied to those women who cannot afford them the equal protection of the laws will be contravened. The argument is developed by the assumption that the legalizing of abortion was done to relieve the indigent of offspring they could not care for, and, the next step, that the legislative intent is thereby thwarted. If that is the legislative intent, the Legislature is fully competent to effectuate it and it is not the province of the court to provide the means. There is no deprivation of right or even privilege by statute. There are several medical services which are not included in the Medicaid program, for example, plastic surgery for cosmetic purposes, and sterilization. Concededly these services are readily available to those who can pay for them. Just because the indigent may not, there is no constitutional mandate that the State supply the service. In my opinion respondent's directive is the only permissible interpretation of the present statutory provisions and, as such, is inviolate. The order declaring the directive to be unconstitutional should be reversed and the petition dismissed. [66 Misc 2d 402.]