OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 At issue is the validity, under the State Constitution, of New York’s Prenatal Care Assistance Program (PCAP) (Public Health Law § 2520
 
 et seq.).
 
 Plaintiffs claim that the statute is facially unconstitutional by reason of underinclusiveness, for its failure to include medically necessary abortions in a prenatal care public funding scheme for women with incomes up to 85% over the Federal poverty level (meaning annual income for a single pregnant woman of between $9,840 and $18,204).
 
 [1]
 
 We now reverse the Appellate Division order and declare the statute constitutional.
 

 The Statute in Issue
 

 New York’s PCAP statute is best understood against the backdrop of related programs.
 

 Medicaid was created by Congress in 1965 to provide Federal reimbursement to participating States for a portion of the cost of all medically necessary services for qualified individuals. Medicaid eligibility is determined by financial need, ultimately assessed by reference to the Federal poverty level— currently annual income below $9,840 for a single pregnant woman. Federal Medicaid reimbursement is available for abortion only in cases of rape or incest, or to save the life of the mother
 
 (see,
 
 Pub L 103-112, §509). States may, however, at their own option and expense, offer services additional to those reimbursed under Medicaid, and New York has consis
 
 *572
 
 tently included all medically necessary abortions in its State Medicaid program (Social Services Law § 365-a [2], [5] [b]; 18 NYCRR 505.2 [e]).
 

 In 1987, Congress created PCAP to afford Federal reimbursement to States providing prenatal care and related services for needy pregnant women with household incomes exceeding the Medicaid eligibility standard
 
 (see,
 
 Omnibus Budget Reconciliation Act of 1987, Pub L 100-203, § 4101). Every State
 
 must
 
 offer PCAP to women with incomes at or below 133% of the poverty level, and
 
 may
 
 extend eligibility up to 185% of the poverty level, without regard to other resources these women may have
 
 (see,
 
 42 USC § 1396a
 
 [l]
 
 [2] [A]).
 

 Effective January 1, 1990, New York amended its Public Health and Social Services Laws to participate in PCAP,
 
 [2]
 
 offering the maximum coverage for which Federal reimbursement is authorized (L 1989, ch 584).
 
 [3]
 
 Thus, in New York, a single pregnant woman with annual income between $9,840 and $18,204 is eligible for PCAP, which covers enumerated pregnancy-related services: prenatal risk assessment, prenatal care visits, laboratory services, parental health education, referrals for pediatric care and nutrition services, mental health and related social services, transportation to and from appointments, labor and delivery, postpregnancy services such as family planning, inpatient care, dental services, emergency room services, home care and pharmaceuticals (Public Health Law § 2522 [1] [a]-[o]).
 

 PCAP does not provide funding for an abortion, or transportation to or from an abortion.
 
 [4]
 
 An eligible woman who elects to have an abortion, however, may receive all other covered pregnancy and postpregnancy services. PCAP coverage continues, without regard to a change in income, for 60 days after the month in which the pregnancy terminates, even if by abortion
 
 (see,
 
 Public Health Law § 2521 [3]).
 

 While Medicaid eligibility generally depends upon verifica
 
 *573
 
 tian of the application
 
 (see,
 
 Social Services Law § 366-a [2]), a pregnant woman applying for PCAP is immediately presumed eligible upon a preliminary showing to a qualified provider that her household income falls below 185% of the poverty level
 
 (see,
 
 Public Health Law § 2529 [2]). Similarly, Medicaid applicants are required to exhaust certain household resources for eligibility
 
 (see,
 
 Social Services Law § 366 [2]), while PCAP applicants need only satisfy the income requirement
 
 (see,
 
 Public Health Law § 2521 [3]; Social Services Law § 366 [4] [o] [2]). These differences are rooted in the exigencies attendant upon the need for prenatal care.
 

 As was made explicit at the time of New York’s adoption of PCAP, the available benefits are tailored to the statutory objective of combatting the State’s "unacceptably high rate of low birthweight and infant mortality” — reportedly higher than the national average — and increasing healthy births by ensuring adequate prenatal care to pregnant women who, although not indigent, are deemed less likely to spend their available resources to obtain good prenatal care
 
 (see,
 
 Mem of State Exec Dept, 1989 McKinney’s Session Laws of NY, at 2218). Studies have documented the correlation between infant mortality and neurological abnormalities on the one hand, and low birthweight and premature birth on the other —conditions ameliorated by proper care throughout pregnancy, which can be costly
 
 (see, e.g.,
 
 House Report No. 99-727 to Pub L 99-509, at 99,
 
 reprinted in
 
 1986 US Code Cong & Admin News 3689). PCAP unquestionably is highly effective in meeting its objective.
 

 Proceedings Below
 

 In September 1990, plaintiffs, led by PCAP-eligible women Jane Hope and Jane Moe,
 
 [5]
 
 commenced this action against the Commissioners of Social Services and Health seeking a preliminary injunction against implementation of the PCAP program to the extent it excludes funding for medically necessary abortions, and a declaration that PCAP-eligible women are entitled to such funding.
 

 Citing evidence that abortions in New York cost between
 
 *574
 
 $200 and $3,500 (depending on the facility and the stage of pregnancy), plaintiffs alleged that PCAP-eligible women are otherwise unable to afford abortions. Jane Hope, age 19, was then a PCAP-eligible pregnant woman advised by her doctor that an abortion was medically necessary, and unable to afford the procedure on her earnings of $230 per week. Jane Moe was income eligible under PCAP and, although not pregnant at that time, is a carrier of a fatal genetic defect that would compel her to have an abortion if she were to become pregnant.
 

 Defendants cross-moved for summary judgment declaring the constitutionality of chapter 584. Supreme Court granted the injunction, holding that PCAP violates the Due Process (NY Const, art I, § 6), Equal Protection (NY Const, art I, § 11), Aid to the Needy (NY Const, art XVII, § 1) and Public Health (NY Const, art XVII, § 3) Clauses of the State Constitution by affirmatively and impermissibly pressuring women to choose childbirth over abortion. The court considered and rejected plaintiffs’ additional argument that PCAP impinges upon the free exercise of religion under the State Constitution (NY Const, art I, § 3), a holding not challenged on appeal. Instead of invalidating PCAP as underinclusive, Supreme Court enlarged the beneficial statute to include medically necessary abortions, staying its order pending appellate review. The Appellate Division affirmed (the Presiding Justice dissenting), agreeing with the trial court that the statute was unconstitutional because it coerced, steered or pressured low-income women into choosing childbirth, thus abridging their fundamental right to choose.
 

 Because a substantial constitutional question is directly involved, defendants appeal as of right
 
 (see,
 
 CPLR 5601 [b] [1]). We granted leave to intervenor-respondent Alma Poindexter, a PCAP recipient.
 

 Analysis
 

 Analysis begins by articulating the common ground. Plainly, PCAP satisfies Federal constitutional standards
 
 (see, Harris v McRae,
 
 448 US 297, 316-318, and n 19;
 
 Maher v Roe,
 
 432 US 464, 474-475). Only the State Constitution is in issue. Moreover, no one disputes that, as every enactment of a coequal branch of government, PCAP is entitled to a strong presumption of constitutionality, and that plaintiffs bear the heavy burden of establishing the contrary beyond a reason
 
 *575
 
 able doubt
 
 (see, Matter of Klein [Hartnett],
 
 78 NY2d 662, 666,
 
 cert denied
 
 — US —,. 112 S Ct 1945). It is not the role of the courts to pass upon the wisdom of the Legislature’s policy choice, even though there may be differences of views about the decision to exclude a medically necessary service from an otherwise comprehensive prenatal care program.
 

 Similarly, it is undisputed by defendants that the fundamental right of reproductive choice, inherent in the due process liberty right guaranteed by our State Constitution, is at least as extensive as the Federal constitutional right
 
 (see, Roe v Wade,
 
 410 US 113, 153-154;
 
 Rivers v Katz,
 
 67 NY2d 485, 493;
 
 see also, Planned Parenthood of Southeastern Pa. v Casey,
 
 505 US —, —, 112 S Ct 2791, 2816-2817). Nor do defendants challenge New York’s long-standing commitment to fund abortions for poor women under the Medicaid program
 
 (see,
 
 Social Services Law § 365-a [2], [5] [b];
 
 see also, Matter of City of New York v Wyman,
 
 30 NY2d 537,
 
 revg on dissent below
 
 37 AD2d 700).
 

 Finally, plaintiffs do not contend that the statute imposes any direct burden, that it makes abortions any less accessible or less affordable for PCAP-eligible women
 
 (see, Golden v Clark,
 
 76 NY2d 618, 626;
 
 Matter of Schulman v New York City Health & Hosps. Corp.,
 
 38 NY2d 234, 240). PCAP-eligible women (who have income above the poverty level and need not exhaust other resources to establish eligibility) are presumptively able to afford abortion, a legislative premise not rebutted on the record before us. As defendants point out, PCAP may even make abortion more affordable for these women as — irrespective of pregnancy outcome — the statute offers free testing for fetal abnormalities that may early in pregnancy indicate the need for (and thereby reduce the cost of) an abortion, mental health and social services, family planning and 60-day postpartum care.
 

 Instead, the heart of plaintiffs’ challenge is that by funding certain childbirth services for these women, but not abortion, the Legislature has violated an obligation under the Due Process Clause not to influence the exercise of a fundamental right.
 
 [6]
 
 Plaintiffs recognize that the fundamental right of reproductive choice does not carry with it an entitlement to sufficient public funds to exercise that right, and that the
 
 *576
 
 State is not required to remove burdens, such as indigence, not of its creation. They urge, however, that by failing to include abortions among PCAP entitlements, the statute creates an impermissible inducement for women to carry their pregnancies to term and relinquish their fundamental right of choice.
 

 Plaintiffs have failed to establish their contention that PCAP even indirectly infringes the right of reproductive choice. There is no evidence that eligible women are coerced, pressured, steered or induced by PCAP to carry pregnancies to term. Thus, even if we were to recognize a governmental obligation to stand neutral — an issue we need not and do not reach in this case — no violation of such a requirement has been demonstrated here.
 

 Plaintiffs’ contention that a selective allocation of public funds in favor of childbirth over abortion can be an indirect burden on the fundamental abortion right arises from the dissenting opinions of the United States Supreme Court concerning Medicaid funding
 
 (see, Harris,
 
 448 US, at 330 [Brennan, J., dissenting] [the "denial of funds for medically necessary abortions plainly intrudes upon this constitutionally protected (abortion) decision, for both by design and in effect it serves to coerce indigent pregnant women to bear children that they would otherwise elect not to have”];
 
 see also, Maher,
 
 432 US, at 484 [Brennan, J., dissenting]). Put succinctly, "[i]t matters not that * * * the Government has used the carrot rather than the stick”
 
 (see, Harris,
 
 448 US, at 334 [Brennan, J., dissenting]).
 
 [7]
 

 This principle has been embraced by several States as a matter of State constitutional law, invalidating Medicaid funding schemes that exclude medically necessary abortions from comprehensive medical care for the indigent
 
 (see, Moe v Secretary of Admin. & Fin.,
 
 382 Mass 629, 654-655, 417 NE2d 387, 402 [1981];
 
 Committee to Defend Reproductive Rights v Myers,
 
 29 Cal 3d 252, 270, 284-285, 172 Cal Rptr 866, 876, 885-886,
 
 *577
 
 625 P2d 779, 789, 798-799 [1981];
 
 Right to Choose v Byrne,
 
 91 NJ 287, 307, n 5, 450 A2d 925, 935, n 5 [1982];
 
 Women’s Health Ctr. v Panepinto,
 
 446 SE2d 658, 661 [W Va]).
 

 The case before us is significantly different. Unlike an indigent woman, whose option to choose an abortion is arguably foreclosed by her lack of resources, the PCAP-eligible woman — not ordinarily a recipient of State assistance — presumptively has the financial means to exercise her fundamental right of choice. That the Legislature in these circumstances elects to subsidize certain prenatal services cannot, in and of itself, be deemed coercive, and no showing has been made that such a woman would be influenced by PCAP to carry a child to term.
 

 Nor does the statute impermissibly penalize women for exercising their right to choose. In
 
 Regan v Taxation with Representation of Wash.
 
 (461 US 540, 545), for example, the Supreme Court upheld Congress’ refusal to extend a tax deduction to charitable contributions made for lobbying activities, concluding that a mere failure to subsidize the exercise of plaintiffs’ right of free speech, even though the deduction was available to those who did not lobby, was constitutionally permissible. Like the regulation in
 
 Regan,
 
 PCAP simply fails to subsidize abortion. Eligibility for the program does not terminate if a participant aborts her pregnancy, nor does the statute require reimbursement for any services received before abortion. PCAP does not penalize the exercise of the right of choice, as it does not deny eligibility for any benefit to which participants choosing to abort would otherwise be entitled.
 

 We thus conclude that PCAP does not in any sense burden a fundamental right, and accordingly the statute is valid if it bears a rational relationship to the State’s interest in providing much-needed prenatal care to low-income women
 
 (see, Golden v Clark,
 
 76 NY2d, at 624,
 
 supra).
 
 Because plaintiffs concede the laudable goals and effectiveness of PCAP in ameliorating infant mortality and morbidity, we conclude that it does satisfy the rational relationship test.
 

 We briefly address plaintiffs’ remaining constitutional claims, which arise from the Aid to the Needy (NY Const, art XVII, § 1) and Public Health (NY Const, art XVII, § 3) Clauses of the State Constitution. Plaintiffs urge that PCAP violates those provisions by excluding coverage for medically necessary
 
 *578
 
 abortions without regard to the financial or medical need of the participants. This contention fails because, as discussed previously, we are bound to accept the legislative determination that PCAP-eligible women are not indigent or in need of public assistance to meet their medical needs. We cannot infer the contrary from the mere fact that PCAP — aimed neither at the protection of public health nor at the support of the needy —was enacted
 
 (see, Tucker v Toia,
 
 43 NY2d 1, 8 [art XVII, § 1 imposes affirmative obligation on the Legislature to aid "those whom it has classified as needy”]).
 

 Moreover, both clauses expressly accord to the Legislature discretion to promote the State’s interest in aiding the needy and promoting public health "in such manner, and by such means as the legislature may from time to time determine” (NY Const, art XVII, §§ 1, 3). We cannot say beyond a reasonable doubt that, by not including abortion funding in PCAP, the Legislature has transgressed its powers.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and judgment granted declaring valid chapter 584 of the Laws of 1989.
 

 Judges Simons, Titone, Bellacosa, Smith and Levine concur; Judge Ciparick taking no part.
 

 Order reversed, etc.
 

 [1]
 

 . Used throughout are the 1994 Federal poverty figures (59 Fed Reg 6277). Monthly income for PCAP-eligible single women would thus range from $820 to $1,517.
 

 [2]
 

 . PCAP replaced New York’s pilot Prenatal Care Assistance Program, created in 1987, which authorized the Commissioner of Health to provide grants of State funds to prenatal care service providers
 
 (see,
 
 L 1987, ch 822). PCAP is funded and administered through the Medicaid program
 
 (see,
 
 Social Services Law § 366 [4] [n], [o]; § 368-a [1]
 
 [,l]).
 

 [3]
 

 . In conjunction with PCAP, New York expanded its Medicaid program to provide Medicaid coverage for pregnant women with incomes at or below the Federal poverty level
 
 (see,
 
 Social Services Law § 366 [4] [m]).
 

 [4]
 

 . New York City, at its own expense, provides abortions free of charge to PCAP-eligible women.
 

 [5]
 

 . The other plaintiffs are four obstetricians/gynecologists, a nurse-midwife, seven health care clinics serving low-income women, four reproductive rights advocacy organizations and two members of the clergy. Supreme Court determined that Moe and the clergy members lacked standing to bring this action, a conclusion not challenged on appeal.
 

 [6]
 

 . [2] While plaintiffs also assert a denial of equal protection, equal protection is at the core of their due process argument, and both challenges fail for much the same reasons.
 

 [7]
 

 . This principle may be traced to
 
 Sherbert v Verner
 
 (374 US 398, 404), in which the Supreme Court invalidated a State provision denying unemployment benefits based on the refusal of a Seventh-day Adventist to accept Saturday work, holding that "the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege.” The Supreme Court itself has limited the neutrality obligation recognized in
 
 Sherbert
 
 to regulations that infringe on rights arising under the Establishment and Freedom of Religion Clauses of the First Amendment
 
 (see, Maher v Roe,
 
 432 US, at 475, n 8).