Simons, J.
(dissenting in part). There can be no argument about the importance of educating our children or that there are serious shortcomings in the New York City school system. But it is possible to recognize those serious social concerns and still conclude, as I do, that plaintiffs have not successfully pleaded a cause of action charging defendants with violating the Education Article of the State Constitution.
Plaintiffs allege in their first cause of action that defendants have violated article XI, § 1 of the New York State Constitution because children in New York City have been deprived of *333 a sound basic education. They support that conclusion by a number of allegations identifying shortcomings in instruction, facilities and student performance in the City’s schools. The majority[1] and Judge Levine in his concurrence conclude this states a cause of action because they interpret the Education Article as containing a qualitative component. In their view, the Constitution guarantees that all school-age children shall receive a sound basic education. They hold that the definition of a sound basic education, and the standard against which the City’s schools are to be measured, is to be judicially determined. If the instruction, facilities and student performance in New York City schools fail to meet that standard, the State has violated the Constitution and must respond to correct the deficiencies in the City’s school system. The majority and Judge Levine differ only on the particulars of the education which the Court should decree necessary.
My review of the history of the Education Article and our Levittown decision interpreting it (Board of Educ., Levittown Union Free School Dist. v Nyquist, 57 NY2d 27) (hereinafter Levittown) leads me to a different conclusion. I believe that the constitutional duty is satisfied if the State creates the structure for a State-wide system of schools in which children are given the opportunity to acquire an education and supports it. It is for other branches of government, not the courts, to define what constitutes a sound basic education and, assuming the State has not defaulted on its duty to establish a State-wide system and provide financial support, to ensure that the opportunity to be educated is available to all. In my view, plaintiffs have not successfully pleaded that the State has violated that duty.
I therefore dissent from so much of the majority’s decision as sustains plaintiffs’ first cause of action alleging a violation of article XI, § 1 of the New York State Constitution.
I
At the outset, it is helpful to remember that the responsibility for primary and secondary education in New York has been historically, and is by law, a joint undertaking of the State and local school districts. The State, acting through the Legislature and the constitutionally created Board of Regents, establishes standards for curricula, faculty and facilities and *334 annually provides financial aid to the local districts. In 1994-1995 the State distributed almost $10 billion in State funds to school districts in New York State. The New York City School District received over one third of that sum (see, Report of Education Unit, New York State Div of Budget, Oct. 31, 1994, at 16-17, 26-27). Although individual districts no longer enjoy the power to establish the criteria for instruction and facilities they once had, they remain charged with administering the schools in their districts and possess broad powers for that purpose. They also supply a major part of the funding necessary to support and maintain their schools. They do so by determining annual expenses and, after crediting that sum with State and Federal aid, raising the balance by local taxation.
In the past, the financial needs of the New York City School District were supported by a greater proportion of local funds than State funds. Since 1983, however, the amount of money contributed by the City has steadily declined while the amount contributed by the State has increased. The State now contributes more to the funding of City schools than does the City. This increase in State aid has not, however, resulted in increased or improved services, only in a reduction in City appropriations for education (see, Chancellor’s Budget Estimate, 1995-1996, Board of Educ of City of NY, at 14). The question before the Court on this appeal, broadly stated, is whether the Constitution requires the State to provide an even greater share of the funds than it now does to defray the cost of operating the New York City schools.
A
Analysis begins with the language of the Constitution. The Education Article provides:
"The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated.” (NY Const, art XI, § 1.)
The words, with utter simplicity, impose a duty on the State to create a "system” for free public education available to all children and to support it. Conspicuously absent are descriptive words, establishing a qualitative or quantitative standard for the education the State must provide. Thus, if the drafters intended to impose on the State a substantive requirement for instruction and facilities, or provide that the State is ulti *335 mately responsible for any shortage of funds in individual school districts, it must be found in the history of the Article, not its words.
The section was adopted in 1894 at a time when there were more than 11,000 independent school districts in the State offering vastly different educational opportunities (see, 3 Lincoln, Constitutional History of New York, at 550-551). The Convention record reveals that the section was proposed to "expressf ] the principle of universal education, and direct[ ] the Legislature to use the power of the State to foster that principle” (3 Revised Record of Constitutional Convention of 1894, at 691). Its "evident purpose [was] to impose on that body the absolute duty to provide a general system of common schools” (3 Lincoln, Constitutional History, op. cit., at 554). Thus, it was said the Legislature must provide "not simply schools, but a system; not merely that they shall be common, but free, and not only that they shall be numerous, but that they shall be sufficient in number, so that all the children of the State may * * * receive in them their education” (id., at 555). The delegates’ concern was focused on establishing a State-wide system of free education. The quality of that education was mentioned only in passing, a delegate stating that it should be "adequate” (3 Revised Record on Constitutional Convention, op. cit., at 695). I find no indication that the drafters intended to go beyond this and impose a qualitative component within the Education Article, or to hold the State liable to make up a shortage of funds in particular school districts.
B
Reviewing this history in Levittown (57 NY2d 27, supra), we concluded that the section was intended to require "a Statewide system assuring minimal acceptable facilities and services in contrast to the unsystematic delivery of instruction” which existed when the Constitution was adopted (Levittown, supra, at 47).
Levittown, of course, involved a different claim than is asserted here: it dealt with the inequality or disparity of the education offered in various districts of the State whereas plaintiffs here assert that the students of New York City’s schools have been deprived of an education meeting constitutional standards. Nevertheless, the Levittown Court interpreted the Education Article and the majority, Judge Levine *336 and I all rely on that interpretation to support our differing views. The majority and the concurrence conclude that the Levittown decision does not foreclose the courts from defining the ingredients of a sound basic education and ordering the State to assume responsibility for providing it. They find in Levittown an "unambiguous acknowledgement of a constitutional floor with respect to educational adequacy,” and from that, assume the power of the courts to override the legislative and executive determinations of what and how much the system must provide (majority opn, at 315). The majority believes that the Levittown Court analyzed the article only so far as was necessary to address inequality and maintains that it is acting consistently with that precedent and only resolving issues the Levittown Court left unanswered. I conclude that the Levittown Court fully considered and determined the scope of the constitutional duty. Our differing interpretations of the same opinion requires a detailed consideration of it.
The decision is best understood by first reviewing the analysis made by the Appellate Division and then this Court’s disposition of the matter. The Appellate Division unanimously agreed in Levittown, though for different reasons, that the Education Article had been violated (83 AD2d 217). Three Justices, speaking through Justice Lazer, stated that the State’s educational finance system was unconstitutional because it created interdistrict variances in educational quality which disadvantaged urban children (id., at 247-251). Acknowledging that article XI, § 1 was "devoid of semantic adornments”, the Court nevertheless amplified its wording to attribute to the section concepts of a "thorough and efficient” school system and an "ample” education, importing qualifying words found in the Constitutions of the States of New Jersey and Washington but not found in the Constitution of New York (id., at 248). Though acknowledging that our Constitution did not explicitly mention a quantitative and qualitative standard, the Appellate Division nevertheless added one, requiring the State to insure that all children are equipped with "certain basic educational skills necessary to function effectively in society” (id., at 248). The Appellate Division looked to statutes (e.g., Education Law § 3204) and to the Regulations of the Commissioner of Education (8 NYCRR part 100) defining the approved curricula to determine the scope of a constitutional guarantee. The mere existence of these standards did not satisfy the Constitution they said; student performance must meet the Commissioner’s standards (83 AD2d, at 249- *337 250). In sum, the Court made a qualitative analysis of the State educational system based upon the degree to which the Commissioner’s standards were fulfilled and, finding performance levels below those standards in some districts, concluded the cause was insufficient State funding. Accordingly, the Appellate Division held the State had failed to "support and maintain” a State-wide system of schools.
Justice Hopkins agreed that the Education Article had been violated but he analyzed the constitutional mandate differently (83 AD2d, at 266-269). He found three key ideas conveyed in the language of article XI: first, a duty was imposed on the Legislature; two, the duty included maintenance and support of a system of common schools; and third, the system had to be available to all children of the State. He found the Legislature had failed to "support and maintain a system of free common schools” because the statutes distributing State aid had become irrational, a "patchwork mounted on patchwork”, a "maze of convoluted intricacies.” He concluded the financing was unconstitutional because it was unsystematic (id., at 268-269).
When the matter reached this Court, we modified the determination of the Appellate Division, construing the Education Article more narrowly and concluding that the Legislature had not violated it. The Appellate Division read a qualitative component into the Education Article because, it said, absent such a component the clause would be "without parameters” (83 AD2d, at 248). We had no difficulty identifying the substance of the provision, however, concluding that it mandated only that the State support and maintain a system of free schools available to all children. We held that the guarantees of the Article had been satisfied because, in the words of the Court, "[t]he Legislature has made prescriptions * * * with reference to the minimum number of days of school attendance, required courses, textbooks, qualifications of teachers and certain nonteaching personnel, pupil transportation, and other matters. If what is available by this system * * * may properly be said to constitute an education, the constitutional mandate is satisfied.” (57 NY2d, at 48.) In other words, the Levittown Court concluded that the system of which the Constitution speaks is a framework of educational programming and, implicitly, regulatory oversight of compliance with that framework. We concluded further that the State manifestly had "supported and maintained” the system because State appropriations for the New York public school system, *338 judged by the fiscal contributions of other States, far exceeded those of all but two others. Based upon those determinations, we held that "a sound basic education” was available for all children in the State and thus the constitutional mandate was satisfied. We rejected the extensive qualitative analysis of the lower courts, holding that the courts were not free to review the adequacy of the appropriations, except, "possibly”, in the case "of gross and glaring inadequacy” of State funding (57 NY2d, at 48-49). In sum, we fully interpreted the Education Article, concluding that the State had met its constitutional obligation because it had created a system — it had defined a sound basic education and the facilities necessary to provide it —and appropriated substantial financial aid to local school districts to support and maintain that system.
The plaintiffs in this action do not contend that the State has defaulted in defining the ingredients of the State-wide system, nor do they allege that the State funding to maintain and support it is grossly inadequate. The position of plaintiffs, the majority and the concurrence is that the State must do more. It must not only set up the structures of a State-wide system, define the ingredients and provide aid to local districts, it must step in with additional financing to ensure that an "education”, as defined by the courts, is fully developed and successful in each of the local school districts. The Levittown Court had before it the same analysis adopted by the majority here, in Judge Fuchsberg’s dissent and in the opinion of the Appellate Division majority, and rejected it (see, 57 NY2d, at 49, n 9).
C
Plaintiffs have not and cannot successfully plead that the present statutory provisions for allocation of State aid to local school districts for the maintenance and support of elementary and secondary education violate the State Constitution as we interpreted them in Levittown.
First, plaintiffs’ claim does not attempt to establish deprivation State-wide; it advances only claims involving some New York City schools. They contend, and the majority and concurrence agree, that the State’s duty is to be measured district by district and requires the State to provide additional funding to rehabilitate ailing districts even though the constitutional obligation is met State-wide. The concurrence supports that position by relying on language from the constitutional de *339 bates to the effect that the new duty would ameliorate conditions in places " 'where the common schools are not adequate’ ” (concurring opn, at 327 [quoting from 3 Revised Record of Constitutional Convention of 1894, at 695]). But the constitutional mandate to support the system of common schools is general in its terms and there is nothing in the debates to suggest that the quoted language meant more than that the Legislature should prescribe standards for a Statewide curricula and facilities to upgrade common schools with inferior standards. Certainly, nothing in the historical materials suggests that the State must step in when a district fails to meet statewide standards and increase State funding to that locality until a satisfactory performance level is achieved.
Confining their argument to New York City’s schools, plaintiffs claim deprivation because selected community school districts in the City have inadequate facilities, low student performance ratios and high dropout rates. They have stated those claims by comparing their circumstances to the rest of the State and by comparing the condition of their schools and the performance of City students to the Regents’ standards for school registration.[2] Their complaint sounds remarkably similar to the complaint of the Levittown plaintiffs and, as a unanimous Appellate Division held, states no more than a claim based on interdistrict disparity.
Plaintiffs further support their claims by assertions that students in New York City make less than "normal progress” than students in other parts of the State, that they perform poorly on achievement tests, and that City children earn fewer Regents’ diplomas than students elsewhere in the State. The failure to make "normal progress” does not constitute deprivation and, as plaintiffs’ own statistics prove, most students, even in New York City, perform at acceptable levels. *340 Manifestly, then, the State is providing children with the opportunity for a sound basic education.
II
Having determined that there is a qualitative component in the Education Article, and that the allegations of subpar performance and facilities in New York City alone state a cause of action, the majority approve judicial review of the State funding scheme. But this Court in Levittown clearly stated that judicial review of the State funding scheme would only be warranted if it appeared there had been a "gross and glaring inadequacy” in State funding (Levittown, 57 NY2d, at 48, supra). In holding that plaintiffs here have stated a cause of action, the majority simply ignores this limitation on our powers.
Thus, even if I were to accept the majority’s analysis that the Constitution guarantees a certain level of instruction and performance and assume that plaintiffs have sufficiently alleged that it has not been satisfied, I still believe plaintiffs have failed to state a cause of action because they have failed to sufficiently plead that State aid to education is grossly inadequate. Unless they can sustain that element, we have no power to declare that defendants must accept responsibility for and cure the shortcomings of the New York City School District.
Plaintiffs allege only in the most conclusory form, and the majority assume without discussion, that the State funding is grossly inadequate and that there is a causal connection between it and the instruction and facilities provided New York City school children and their performance. But the State appropriates almost $10 billion for school aid State-wide —approximately one sixth of the money appropriated for all State purposes — and the New York City School District receives more than a third of it. Even if the State’s obligation were imposed district by district, current State appropriations to New York City do not approach a "gross inadequacy” in State funding.
Plaintiffs also complain that they enroll 37% of the State’s public school population but receive slightly less than 35% of the total State aid distributed. There is no constitutional requirement, however, that the State maintain exact parity in the financial aid distributed to the several thousand school districts. Insofar as plaintiffs attack the formula by which *341 State aid is calculated, or allege that it is inequitable, their claim is similar to the claim Justice Hopkins accepted in Levittown (83 AD2d, at 266). It was rejected by this Court (see, 57 NY2d, at 48, n 7).
Moreover, there is serious doubt that plaintiffs can establish that any claimed deficiency in the State funding scheme has caused a deprivation of educational opportunity to City students. These claims against the State are presented at a time when New York City is reducing its funding to the City School District when measured both in terms of the dollars appropriated and the percentage of its municipal budget allocated to education (see, Chancellor’s Budget Estimate, 1995-1996, op. cit., at 14). And these reductions have occurred even though the City is among municipalities having the lowest residential property tax rate for school purposes in the State and devotes the lowest percentage of its tax revenue to education. The Chancellor of the City School District has stated that the City contributes approximately 20% of its revenues to education, whereas the percentage contributed to education by other localities in the State is almost twice as much (see, Chancellor’s Budget Estimate, 1995-1996, op. cit, at 14). Based upon this evidence, a court could justifiably conclude as a matter of law that the shortcomings in the City schools are caused by the City’s failure to adequately fund City schools, not from any default by the State of its constitutional duty.
Ill
Of course, the majority may interpret the State Constitution, or our Levittown decision, as mandating a level of student performance and authorizing judicial determination of the curriculum and facilities and State funding necessary to achieve that level if it chooses, but I believe it unwise to do so for several reasons.
The first was stated by the Levittown Court. In an opinion fully sensitive to the political process by which we are governed and the separation of powers concerns which restrain courts from interfering with responsibilities resting elsewhere, Levittown defined the standard for measuring the constitutional requirement and properly avoided a judicial determination of the highly subjective and policy-laden questions of how much (or little) students must be taught or how well (or poorly) they must perform before a court should intervene. The courts, we held, were not to interfere in constitutional *342 responsibilities assigned to other branches of government unless the executive and legislative branches had, in effect, defaulted on their duty to establish a State-wide system of education and fund it. I find that reasoning persuasive.
The State Legislature, in which New York City is amply represented, annually investigates and reviews the educational needs of the various school districts, and may conduct hearings to solicit further views if it deems them necessary. Based upon the information available to it, the Legislature distributes billions of dollars of educational aid throughout the State. Surely the legislators are aware that the quality of the educational opportunity in some districts in New York City is inferior to the opportunity in other districts in the City and State. If they conclude that resources of the State call for a certain level of funding notwithstanding those problems and if that funding is not "grossly inadequate”, it is not for us to force the State to do more. The Legislature is far more able than the courts to balance and determine State-wide needs and equities and, I need hardly mention, such determinations are well within its constitutional domain.
The majority apparently view the constitutional provision as establishing an entitlement to receive an adequate education. It assumes that there is a point at which the education available is so palpably inadequate that the courts must intervene, determine the extent of the inadequacy and order the problem solved at State expense. And the courts may impose this duty on the State, the majority holds, even though the State has established a structure for the school system and provided adequate funding for it as measured by the State’s resources.
If we were dealing with a constitutional right personal to each child in New York, then the Court’s power to override the majority’s will to protect those rights might be justified. But the Education Article states a general duty. The Constitution is satisfied if the majority has worked its will through its elected officials and their action represents a reasonable response to the duty imposed. The courts have the power to see that the legislative and executive branches of government address their responsibility to provide the structure for a State-wide school system and support it but we have no authority, except in the most egregious circumstances, to tell them that they have not done enough.
Finally, it is not clear whether increased State aid to New *343 York City is to be provided by increasing appropriations for education generally, or reallocating the current State-wide appropriations so that New York City schools receive a greater share of the aid appropriated.[3] If State aid to education is to be generally increased, the increase will necessarily be achieved at the expense of other equally meritorious programs deprived of some portion of the State resources previously used to fund their activities. If there is to be a reallocation of State aid to provide greater funding for New York City —or a reconstruction of the State aid formula for that purpose —the reallocation will be achieved at the expense of other school districts in the State. They will then be forced to increase local taxes to fund education for their districts and to do so at a time when New York City is reducing its municipal appropriations for education. Judicially compelling either course encroaches on the Legislature’s power to order State priorities and allocate the State’s limited resources.
This assumption of power in the field of education sets a precedent for other areas that will be hard for the courts to resist in the future. The State Constitution is a voluminous document covering not only the distribution and scope of power, but also addressing dozens of other matters as diverse as public housing, nursing homes, canals, ski trails and highways. The State, to a greater or lesser degree, is directed to maintain and protect all those services and facilities. It cannot be that each of them are matters calling for quantitative and qualitative judicial oversight in their funding and operation.
To explore just one example, the New York State Constitution provides, in language similar to that contained in article XI, § 1, that the State "shall” provide "aid, care and support of the needy” (NY Const, art XVII, § 1). There is, and probably always will be, a profound public debate over who should be eligible for public assistance and whether the levels of assistance are too high or too low. We have assiduously avoided making quantitative and qualitative determinations in this area in the past, concluding that those are questions for the *344 legislative and executive branches to decide (see, Hope v Perales, 83 NY2d 563, 578; Matter of Barie v Lavine, 40 NY2d 565; Matter of Bernstein v Toia, 43 NY2d 437). If the Court is to assume the responsibility of determining what level of educational services and student performance must be achieved under the Constitution, I know of no legal answer for those who will contend that we must resolve similar questions challenging compliance with the Social Welfare Article or other sections of the Constitution.
The temptation to address these school problems judicially is understandable. But the Constitution provides for particularized areas of responsibility and it is not for the courts to mandate that the State must spend more of its finite resources for education and less, say, for housing the poor or healing the sick. Nor is it for us to say that the current resources devoted to education are to be transferred to one part of the State to the loss of others. Those are choices delegated to the people’s elected representatives, not Judges, and in the absence of their manifest failure to address the problem, the judiciary should refrain from interfering.
Accordingly, I would dismiss plaintiffs’ first cause of action asserting defendants have violated article XI of the State Constitution.

. Judges Titone, Bellacosa, Smith and Ciparick constitute the majority with respect to this cause of action.

. The regulations provide an extensive list of criteria which must be maintained by schools registered in the State. If an individual school falls below these standards, the Commissioner may review the school’s registration, develop and implement a "comprehensive school improvement plan” and, if improvement is not satisfactory, may revoke the registration which is required of all public schools in the State (see, 8 NYCRR 100.2). The pleadings do not allege that the Commissioner has taken or threatens to take any of these steps with respect to any of the City’s schools.
Significantly, many figures relied upon by plaintiffs to prove their point that an adequate education had not been provided are less substantial than figures relied upon by the Appellate Division and Judge Fuchsberg in Levittown (see, 83 AD2d 217, 250, 57 NY2d 27, 50, supra).

. The majority questions this writing for discussing additional funding for the City School District, claiming that issue is not before the Court at this time (see, majority opn, at 316, n 4). I am at a loss to know what this litigation is about if it is not about additional funding for the City schools. Plaintiffs’ complaint refers continually to the unfair and inadequate amount of State aid the New York City School District presently receives and certainly they will seek to receive more State aid to solve their local problems if they prevail in this litigation.