OPINION OF THE COURT
Chief Judge Kaye.
Public Authorities Law § 1685 provides that, because "the creation of the [dormitory] authority * * * is in all respects for the benefit of the people * * * the state of New York covenants with the holders of the bonds that the [dormitory] authority shall be required to pay no taxes or assessments *76 upon any of the property acquired by it or under its jurisdiction, control, possession or supervision.” The primary issue before us is whether the term "assessment” as used in this provision includes a "special assessment” of the kind issued against appellant Dormitory Authority by respondent Hyde Park Fire and Water District.
 The Appellate Division held both that the Dormitory Authority is not exempt from the special benefit assessment under Public Authorities Law § 1685 and that the assessment methodology was valid and proper. Although we agree with the Appellate Division concerning the propriety of the methodology used to assess charges against Hyde Park property owners generally, we conclude that the Dormitory Authority is exempt under Public Authorities Law § 1685, and therefore modify the Appellate Division order.
In 1986, after being directed by the New York State Department of Environmental Conservation to halt discharges of certain compounds from its aging water plant, respondent Hyde Park Water District, an independent entity created by the Legislature before the Civil War, decided to construct a new drinking water treatment facility using the Hudson River as its source. The District’s Board of Trustees considered three financing alternatives for the design and construction of the new facility: ad valorem assessment, benefit assessment and water rate charges. After extensive deliberation and debate, the Board accepted the District Engineer’s recommendation for the benefit assessment methodology, specifically authorized under its Charter, as the most equitable way to apportion the improvement among property owners within the District.
Using this methodology, the District determined that the benefit to be conferred on each parcel was to be calculated according to the property’s actual or projected water needs. All existing residential structures in the District were assigned one to three benefit assessment units based on the District average of 164 gallons consumed, 218 gallons required per day. Larger commercial structures were assigned benefit assessment units based on their actual metered daily consumption. Finally, the District projected the reasonably likely development and resulting water needs over time of undeveloped parcels based on zoning ordinances and approvals as well as factors such as parcel shape, frontage and topography. As part of the SEQRA review process, respondent Board prepared and circulated Environmental Impact Statements describing *77 the project and the benefit assessment methodology. After numerous public hearings, the District taxpayers approved a resolution authorizing issuance of up to $20 million in bonds to finance the project. As a result, each year during the period 1988-1990, the District sent special benefit assessment bills to Hyde Park property owners.[1]
After receiving its first assessment in 1990, appellant Dormitory Authority, a public benefit corporation that owns and manages student dormitories throughout the State — including the facility on the campus of the Culinary Institute of America at issue here — filed a grievance challenging its assessment. After a hearing, the District adhered to its initial assessment.
The Dormitory Authority along with six other Hyde Park landowners then commenced CPLR article 78 and RPTL article 7 proceedings challenging the benefit assessment methodology and the resulting assessments as unlawful, irrational and unconstitutional.[2] The Board of Trustees, in turn, sought summary judgment dismissing the petitions on the grounds that the claims were time barred, barred by res judicata, not legally cognizable and unsupported by the record. In the meantime, the District issued its 1991 benefit assessment roll, which was added to the case. After consolidation of all challenges, Supreme Court granted the Board’s motion to dismiss the proceedings and the Appellate Division affirmed (206 AD2d 483).
We now hold that the Appellate Division erred in concluding that the Dormitory Authority was not entitled to an exemption under Public Authorities Law § 1685.
Public Authorities Law § 1685 was enacted in 1944 (L 1944, ch 524) and last amended in 1949 (L 1949, ch 786). The predecessor to current RPTL 102 (15), where the terms "special assessment” and "assessment” were first defined as corre *78 spending to separate and distinct concepts,[3] was passed nearly a decade later (L 1958, ch 959 [§ 102]). The Legislature that enacted Public Authorities Law § 1685 therefore plainly did not use the terms "assessment” and "special assessment” as they were subsequently defined in the RPTL. We cannot assume, as respondent does, that a different Legislature, enacting an entirely different section of the law, had the RPTL definitions in mind when passing Public Authorities Law § 1685.
In fact, the statutory language makes it clear that Public Authorities Law § 1685 and RPTL 102 (2) use the term "assessment” differently, with Public Authorities Law § 1685 referring to a form of taxation from which the Authority is to be excused, while RPTL 102 (2) refers instead to an estimate of property value upon which a tax is ultimately based (see, RPTL 102 [2] [defining "assessment” as determination made by assessors of valuation of real property]). If the word "assessment” in Public Authorities Law § 1685 is to be interpreted in accordance with the definition provided in RPTL 102 (2) to refer to an estimate of property value, the provisions of Public Authorities Law § 1685 are rendered legally meaningless. The Legislature did not exempt the Dormitory Authority from an estimate of property value. Using the current RPTL definition of "assessment” to limit Public Authorities Law § 1685 would thus contravene principles of sound statutory construction.
The court in Town of Cheektowaga v Niagara Frontier Transp. Auth. (82 AD2d 175, 179-181), construing an analogous provision in Public Authorities Law § 1299-0, perceived that the Legislature instead used the word "assessment” in its other, more "generic” sense as "a tax, fine or other special payment” which would include a "special assessment” of the kind at issue here (Town of Cheektowaga, at 179-181). Black’s Law Dictionary, for example, explains that the word "assessment” is "popularly used as a synonym for taxation in general * * * but * * * only taxation for a special purpose or local *79 improvement, local taxation, as distinguished from general taxation” (Black’s Law Dictionary 150 [4th ed 1968]). Under "special assessment,” Black’s Law Dictionary simply refers the reader to the above-cited definition for "assessment” (id,., at 1569). (See also, Cummins v U. S. Life Tit. Ins. Co., 40 NY2d 639 [using terms "assessment” and "special assessment” interchangeably]; Matter of Nolan v Bureau of Assessors, 31 NY2d 90 [same]; 3 Powell and Rohan, Real Property 495 [1] [1994] [same]).
The fact that the Legislature amended Public Authorities Law § 1299-0 in 1982 after the Appellate Division’s ruling in Cheektowaga to specify that special benefit assessments were no longer exempted under the provision applicable to the Niagara Frontier Transportation Authority (L 1982, ch 836) is not sufficient to overcome the Legislature’s intent with respect to the Dormitory Authority and Public Authorities Law § 1685. When the Legislature has intended not to exempt a particular public authority from special benefit assessments, it has said so explicitly (see, e.g., Public Authorities Law §§ 1299-qq, 1316, 1341 [exempting other public authorities from payment of all taxes "except special benefit assessments”]).
If, as respondent argues, it is more desirable that local municipalities such as Hyde Park not be swept into a wider net of exemption for local improvements that benefit the public authorities within their borders, such a policy determination must be made by the Legislature, not the Court. Public Authorities Law § 1685 granted such an exemption and we cannot take it away by judicial interpretation.
Finally, even assuming that principles of res judicata/ collateral estoppel do not bar the challenges asserted by the other Hyde Park property owners, we agree with the Appellate Division that the special assessments imposed, fully authorized by the District’s voters, were valid and constitutional. The record reveals that a detailed study was performed by the Board of Trustees before implementation of the assessment methodology and, in the absence of a showing to the contrary, the assessment is presumed valid. In any event, these taxpayers failed to offer sufficient proof that the amounts of the special assessments levied against them were substantially in excess of the undisputed benefits they will ultimately receive as a result of the new water treatment plant.
*80 Accordingly, the order of the Appellate Division should be modified in accordance with this opinion, without costs, and, as so modified, affirmed.
Judges Simons, Titone, Bellacos a, Smith and Ciparick concur; Judge Levine taking no part.
Order modified, etc.

. After the initial 1988 assessment, a constitutional challenge to the enabling legislation was brought by various property owners and ultimately rejected (see, Van Wagner v Hyde Park Fire & Water Dist., 158 AD2d 518, appeal dismissed 76 NY2d 771). A second lawsuit challenging the methodology used in connection with the 1989 benefit assessments was dismissed on the ground that the methodology employed was rationally based and impartially applied (see, Matter of Hy-Sid, Inc. v Board of Trustees, Sup Ct, Dutchess County, Sept. 10, 1989, index No. 89-553). No appeal was taken from that decision.

. These proceedings thus represented yet a third attempt by Hyde Park property owners to challenge the special benefit assessments.

. RPTL 102 (2), for example, currently defines the term "assessment” as "a determination made by assessors of (1) the valuation of real property, including the valuation of exempt real property and (2) whether or not real property is subject to taxation or special ad valorem levies.” "Special assessment,” in turn, is defined in RPTL 102 (15) as "a charge imposed upon benefited real property in proportion to the benefit received by such property to defray the cost, including operation and maintenance, of a special district improvement or service.”