[660 NYS2d 155]

In the Matter of ROBERT L. SCHULZ et al., Appellants, v NEW YORK STATE LEGISLATURE et al., Respondents.

Third Department, July 3, 1997

### APPEARANCES OF COUNSEL

*Robert L. Schulz,* Queensbury, and others, appellants *pro se.*

*Dennis C. Vacco, Attorney-General,* Albany *(Frank K. Walsh* and *Peter H. Schiff* of counsel), for New York State Legislature and others, respondents.

*Nixon, Hargrave, Devans & Doyle, L. L. P.,* Garden City *(Thomas S. D'Antonio* and *James P. O'Brien, Jr.,* of counsel), for Hyde Park Fire and Water District and others, respondents.

*Ian G. MacDonald, Dutchess County Attorney,* Poughkeepsie *(Gail W. Epstein* of counsel), for Dutchess County Real Property Tax Service Agency, respondent.

### OPINION OF THE COURT

CARPINELLO, J.

This action/proceeding is yet the latest in a long series of lawsuits involving challenges to the method by which the

Board of Trustees (hereinafter the Board) of respondent Hyde Park Fire and Water District (hereinafter the District) has assessed taxes for the construction of a new water treatment facility. Although not intended to be an exclusive list of all prior litigation involving this facility, we note the following cases: *Matter of New York State Dormitory Auth. v Board of Trustees of Hyde Park Fire & Water Dist.* (206 AD2d 483, *mod* 86 NY2d 72), *Eckelman v Anderson* (180 AD2d 618, *lv denied* 79 NY2d 759) and *Van Wagner v Hyde Park Fire & Water Dist.* (158 AD2d 518, *appeal dismissed* 76 NY2d 771).

The District's origin can be traced to its establishment by an 1860 special act of the Legislature (*see*, L 1860, ch 257). By 1987, the District had been providing water to its residents for more than half a century from a facility which drew from the Crum Elbow Creek. According to the District, the State Department of Environmental Conservation required that it cease the discharge of solids into the Crum Elbow Creek from its then-aging water treatment facility by the end of 1988. Consequently, the District decided to borrow approximately $20 million to build a new treatment facility using the Hudson River as its source.

While the parties have long disputed the wisdom of the Board's decision regarding the size of the new facility (the District allegedly has only about 2,000 residents), the gravamen of the instant dispute is the method adopted by the Board for assessing taxes on District properties to pay for construction costs. The three methods considered were (1) ad valorem assessments, (2) water rate charges, and (3) the benefit assessment method (which was ultimately adopted). Under this latter methodology, assessments for the payment of capital costs are levied against District properties based upon the "benefit derived by each property within the District". The Board selected this method because of its concern that neither ad valorem assessments nor water usage charges would be a fair method of financing the considerable capital costs since owners of undeveloped property "likely [to] be developed during the life of the facility" would not be paying according to the benefits conferred.

The benefit assessment system required that each piece of property be assessed a particular number of benefit units based not only on the existing condition of the property, but also its *maximum* future development *potential*. The units were calculated after a review of numerous factors, including zoning and topography. The assessment roll reveals that the vast ma-

jority of District residents were assigned a single benefit unit as owners of single-family homes. Because of the development potential of several large undeveloped tracts of land, other owners were assigned several hundred benefit units. For example, Elbow Creek Development Corporation, of which petitioner Theodore Marks is a shareholder, was assessed 542 benefit units based upon the development potential of its 168.3-acre parcel.

The Board points out that the benefit assessment system was intended only to address the capital costs of the new facility since operation and maintenance charges, as well as charges for water actually consumed, would be billed separately. The justification for the benefit assessment methodology is best summarized in an affidavit of the District's president, in which he explains that "[w]hen[1] the owner decides to develop that property, the District's plant and transmission capacity will be sufficient to meet that parcel's needs" (emphasis supplied). Petitioners allege that utilization of this methodology has resulted in less than $1/10$ of 1% of the taxpayers in the District paying over 64% of the total taxes, a charge not refuted by respondents.

The practical effect of shifting most of the cost of the District to owners of large undeveloped parcels is exemplified by analyzing the history of the Elbow Creek parcel, which throughout the relevant time period has had an assessed value of $390,000. In 1987, its annual tax was $194. By 1994, its annual tax had risen almost a thousandfold, to $142,464. Not surprisingly, most of the large undeveloped parcels in the District have been acquired by Dutchess County for nonpayment of taxes. This has led to the County now being the largest taxpayer in the District, paying well over $1 million every year on parcels already acquired in foreclosure or presently delinquent in taxes. Notably, the County is currently paying 63% of the District's total annual benefit assessment revenues. Efforts to sell the foreclosed properties at public auctions have been totally unsuccessful, presumably because no one is interested in acquiring them and paying District taxes under the current scheme. In February 1997, in response to this dilemma, the Dutchess County Water and Wastewater Authority formally proposed to acquire the District's water system and restructure the benefit assessment methodology, a plan which will provide

---

1. Significantly, the use of the term "when", as opposed to "if", plainly reveals the Board's assumption that every property *will be* developed to its maximum potential.

no remedy to those owners who have already lost title to their properties.

The immediate problem faced by petitioners in the instant action/proceeding is that the vast majority of the 14 claims asserted in the complaint/petition have already been addressed in the earlier proceedings. For the reasons articulated in the decision of Supreme Court, which we need not repeat here, we agree that 13 of the 14 asserted claims should be dismissed. We disagree only with the court's finding that the seventh claim should be dismissed.

■ For purposes of clarification, we agree that petitioners Robert L. Schulz, Fairlene G. Rabenda and H. William Van Allen, who all live outside the District, lack standing with respect to the only remaining claim.[2] Additionally, all claims against the State respondents (the State Legislature, Sheldon Silver, Joseph Bruno, the Comptroller and the State Environmental Facilities Corporation and its president) were properly dismissed and the complaint/petition is dismissed in its entirety as against them. Because we find no basis to impose individual liability against the Board members, we also affirm the dismissal of all claims which seek to impose any liability, financial or otherwise, against them in their individual, as opposed to representative, capacity (see, Rottkamp v Young, 21 AD2d 373, affd 15 NY2d 831).

■ Petitioners' seventh claim—that they have been deprived of their property without due process of law in violation of the 14th Amendment of the US Constitution—should not have been dismissed as a matter of law on a motion made pursuant to CPLR 3211 (a) and 7804 (f). In short, we find this claim to have been sufficiently pleaded. To this end, we note that upon a motion to dismiss a complaint for legal insufficiency in a declaratory judgment action, the test is not whether a party will succeed in getting a declaration of rights in accordance with a theory or contention advanced, but whether "[t]he allegations of the complaint * * * when considered as true, demonstrate the existence of a bona fide justiciable controversy which should be settled" (Sysco Corp. v Town of Hempstead, 133 AD2d 751, 752; see, Nasa Auto Supplies v 319 Main St. Corp., 133 AD2d 265; Metropolitan Package Store Assn. v Koch, 89 AD2d 317, mot to dismiss appeals granted 58 NY2d 1112, appeal dismissed 464 US 802).

---

2. Accordingly, all subsequent references to petitioners will not include these individuals.

We are cognizant that the Due Process Clause will invalidate local tax legislation "only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property" (*Magnano Co. v Hamilton*, 292 US 40, 44; *see, Pittsburgh v Alco Parking Corp.*, 417 US 369). We also acknowledge that benefit assessment methodologies similar to the one used in this case have survived constitutional challenges even where the determination of benefits conferred is based on future developmental potential (*see, Baglivi v Town of Highlands*, 147 AD2d 432; *Matter of DWS N. Y. Holdings v County of Dutchess*, 110 AD2d 837). Based upon the unique facts of this case, however, we are nevertheless compelled to conclude that petitioners have stated a cause of action sufficient to survive a motion to dismiss.

■ Petitioners' seventh claim constitutes a legally cognizable claim that the tax at issue "proposes, or clearly results in, such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation" (*Dane v Jackson*, 256 US 589, 599), in violation of US Constitution 14th Amendment, sufficient to require a resolution on the merits. We do not believe that this claim is barred by the doctrine of res judicata based upon the holding in *Matter of New York State Dormitory Auth. v Board of Trustees of Hyde Park Fire & Water Dist.* (86 NY2d 72, *supra*). In this regard, we are mindful of the admonition by the United States Supreme Court that, in the context of a claim that a local tax violates the Due Process Clause of the 14th Amendment, "an extreme application of state-law res judicata principles violates the [US] Constitution" (*Richards v Jefferson County*, 517 US —, —, 116 S Ct 1761, 1769). In affirming the dismissal of the petitions in *Matter of New York State Dormitory Auth. v Board of Trustees of Hyde Park Fire & Water Dist.* (*supra*), the Court of Appeals noted that the "taxpayers failed to offer sufficient proof that the amounts of the special assessments levied against them were substantially in excess of the undisputed benefits they will ultimately receive as a result of the new water treatment plant" (*supra*, at 79). Although petitioners were parties to the proceedings in that case (*cf., Richards v Jefferson County, supra*), a review of its record reveals that only the 1990 and 1991 tax assessments were at issue. Those assessments were levied at a point in time well before the alleged confiscatory nature of the tax could

have been established. In sum, petitioners have made a sufficient showing to withstand respondents' motion to dismiss the seventh claim in the complaint/petition.

As a final matter, we note that the injunction issued by this Court enjoining Dutchess County from transferring, by sale or otherwise, any parcel of land seized for failure to pay assessment taxes is continued pending a final judgment.

MIKOLL, J. P., CREW III, CASEY and SPAIN, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as granted the motions dismissing the seventh claim in the petition/complaint; motions denied regarding said claim; and, as so modified, affirmed.