■ CITY OF NEW YORK, Respondent, v LONG ISLAND POWER AUTHORITY, Appellant. [789 NYS2d 309]—

In an action, inter alia, for a judgment declaring that the defendant is subject to the obligations of the Long Island Lighting Company to support, protect, and relocate the transmission and distribution system of electrical power to the Rockaway Peninsula, the defendant appeals from an order and judgment (one paper) of the Supreme Court, Queens County (Flug, J.), entered July 21, 2003, which, inter alia, granted the plaintiff's motion for summary judgment, denied its cross motion for summary judgment dismissing the complaint, and declared that it is subject to the obligations of the Long Island Lighting Company to support, protect, and relocate the transmission and distribution system of electrical power to the Rockaway Peninsula and is responsible for all costs of future utility interference work on the subject transmission and distribution system.

Ordered that the order and judgment is affirmed, with costs.

The Public Authorities Law created the Long Island Power Authority (hereinafter LIPA) and empowered it to acquire all or part of the assets of the Long Island Lighting Company (hereinafter LILCO) (*see* Public Authorities Law § 1020 *et seq.*).

Pursuant to its rights and obligations, LIPA entered into a merger agreement to acquire LILCO's assets, including "all franchise and utility service responsibilities for all ultimate consumers of gas and electricity within LILCO's former service territory" (Public Authorities Law § 1020-g [n]). The Public Authorities Law also empowered LIPA to enter into contracts with municipalities, and thus the entity was able to assume the franchises (*see* Public Authorities Law § 1020-f [h]). The franchises at issue included the responsibility to pay all costs associated with removal, protection, and relocation work for LIPA's utility equipment during municipal public works projects (*see Matter of Diamond Asphalt Corp. v Sander,* 92 NY2d 244 [1998]). Contrary to LIPA's contention, there is no indication that the Legislature intended that it be exempt from this obligation based on its status as a corporate municipal instrumentality and political subdivision of the State of New York (*see* Public Authorities Law §§ 1020-c, 1020-f [h]; § 1020-g [n]). Florio, J.P., Adams, S. Miller and Goldstein, JJ., concur.