*541 OPINION OF THE COURT
Ira B. Warshawsky, J.
Preliminary Statement
Motion (sequence No. 3) by the attorney for the plaintiff for an order in favor of the plaintiff awarding it summary judgment pursuant to CPLR 3212 is granted. Cross motion (sequence No. 4) by the attorney for the defendants for an order in favor of the defendants awarding them summary judgment pursuant to CPLR 3212 is denied.
Background
The plaintiff, Long Island Power Authority (LIPA), seeks a judgment exempting LIPA from the imposition of commercial sewer use assessments, fees or charges against a property located within Islip known as Brentwood (hereinafter the Property) and an order enjoining defendants from imposing commercial sewer use fees or charges against LIPA on the Property. Defendants counterclaim for the sum of $2,007,995, of which $1,007,995 is allegedly owed by plaintiff to defendants as a result of the assessments. Plaintiff LIPA is exempt from taxes and assessments pursuant to LIPA Act (Public Authorities Law, art 5, tit 1-A) § 1020-p. However, LIPA is required to make disbursements known as PILOTs (payments in lieu of taxes) to municipalities negatively impacted by the removal of local properties from the tax rolls during LIPA’s acquisition of the assets of the Long Island Lighting Company (LILCO) in the 1990s. {Id. § 1020-q.) In addition, LIPA has the power to enter into discretionary agreements with any municipality to pay annual sums in lieu of taxes in respect to properties owned within the municipality. {Id. § 1020-f [w].)
In 2003, LIPA acquired a parcel of land that was once part of the now defunct Pilgrim State Hospital, located in Islip, New York. The previous owners of the Property had entered into a Connection Agreement in 1991 with the local sewer agencies that set out sewer design and a fee structure. LIPA subsequently improved its newly acquired property with two gas-fired electric generation units. LIPA asserts the generation units are not attached to the local sewer system, do not generate, and are not capable of generating sewage. In 2006, LIPA settled a civil action involving the Property through a PILOT agreement with the Assessors of the Town of Islip agreeing to voluntarily pay approximately $2,000,000 for each tax year from 2003/2004 through 2008/2009.
*542 In 2005, Suffolk County Sewer Districts notified LIPA that an assessment would be imposed on the Property for commercial sewer use for the previous two years and subsequent years. The November 2005 notice stated that LIPA owed Suffolk County Sewer District No. 3-Southwest (the District) $804,192, the bulk of which was predicated upon an ad valorem, or value of the property, assessment. LIPA contested the assessments, but defendants rejected the requests for reconsideration. Subsequently, an additional statement dated May 1, 2007 assessed a further $203,803 against LIPA for commercial sewer use in the period of January 1, 2007 to December 31, 2007, raising the total amount charged to LIPA by the sewer district to $1,007,995. As a result of the defendant’s failure to grant the plaintiff the relief it requested, LIPA commenced the within action for a judgment declaring that LIPA be exempt from these assessments and a permanent injunction prohibiting the imposition of commercial sewer use fees on the Property.
In this summary judgment motion for a declaratory judgment, plaintiff predicates its motion on three claims: (1) LIPA is exempt from the imposition of commercial sewer use assessments; (2) the connection agreement, upon which defendants rely, does not authorize the imposition of commercial sewer use charges in this case; and (3) LIPA cannot be assessed for commercial sewer use if the Property is unconnected and does not use sewer facilities. LIPA argues the District is wrongfully assessing LIPA for “Commercial Sewer Use” even though LIPA does not use it, and the Property is not connected to the District’s sewer facilities.
In or about 1991 the New York State Office of Mental Health (OMH) had to abandon its then existing sewage treatment plant located on the Pilgrim State premises in order to meet wastewater discharge standards of the New York State Department of Environmental Conservation. OMH was required to enter into a contract with the District in order to connect to and receive sewer services from the District’s sewer system, since the Pilgrim State premises are not located within the boundary of the District, or within the boundary of any other Suffolk County sewer district.
The 1991 Connection Agreement provided for an “Initial Capacity” of 480,000 gallons per day allocated for OMH and an additional capacity of 250,000 gallons per day, 20,000 of which were allocated to Suffolk County Community College (SCCC), located on the northeast portion of the Pilgrim State premises. *543 Payment for the sewer services under the 1991 Connection Agreement is set forth in section 6 (a) entitled “Fees and Charges Payable to the District” and was based on the following: a per parcel charge; an ad valorem charge; a user charge; a metered pretreatment fee; and an administration fee.
Section 6 (c) of the 1991 Connection Agreement provides: “All fees and charges payable by OMH under Sections 6 (a) (i) through 6 (a) (v) hereof shall commence upon the date the Project Facilities are first placed into operational use for the benefit of OMH.”
The 1991 Connection Agreement provides that if other parties desired to connect to the District’s sewer facilities to be constructed and installed on the Pilgrim State premises, written notice to the District is required.
“No properties, parties, persons, corporations or other entities shall be permitted to connect to the Project Facilities or any other sewerage facilities of OMH, whether or not situate in, under or upon the Premises, nor to any sewerage facilities in, under or upon the Premises, whether or not owned by OMH, whether inside or outside the boundary lines of the District, without prior written notice to the District.”
The 1991 Connection Agreement also contains a provision (section 24) to protect the District’s sewer system if there were a change in ownership or use that would adversely affect the District’s facilities.
The District began billing OMH for sewer services in 1997 when the Pilgrim State premises were actually connected to, and began using, the District’s sewer facilities.
According to Benjamin Wright, an employee of the Suffolk County Department of Public Works, who was familiar with the 1991 Connection Agreement, the intention was that OMH would be charged for sewer services once the connection was completed. Defendants claim they became aware in the early 2000s that several entities had acquired portions of the premises no longer used by OMH, namely: LIPA, the New York Power Authority (NYPA), the Wingate Inn, the Town of Islip IDA, and the New York State Department of Parks and Recreation (Parks Department).
The evidence shows that SCCC, Wingate Inn and NYPA all executed separate connection agreements in their own names. According to Mr. Wright, there was a procedure applicable to *544 new owners who wanted to connect to the District’s facilities, which involved executing their own connection agreements with the District, and which had to be ratified by the Legislature before the connection could be effectuated.
The District began billing SCCC for sewer charges in 1997 when SCCC connected to, and wastewater began flowing into, the District’s sewer system. The District began billing the Win-gate Inn for sewer charges when the Wingate Inn connected to the District’s sewer system in 2003, because, according to Mr. Clausen, a Department of Public Works (DPW) accountant, it was only then that “billing begins.” NYPA connected to the District’s sewer facilities in 2002 and the District commenced billing NYPA for sewer charges in 2003.
It was not until 2005 that Mr. Clausen, the DPW accountant, admittedly made a unilateral decision to begin billing LIPA, retroactive to 2003, for “commercial sewer use,” even though he knew LIPA did not use and was not connected to the District’s sewer facilities. Mr. Clausen testified that he did not discuss sending bills to LIPA with anyone in the department; he simply decided to bill LIPA when he “found out,” sometime in 2004, that portions of the Pilgrim State premises had been transferred to LIPA, as well as NYPA and the Islip IDA. Mr. Clausen also “found out” about the transfer to the Parks Department in 2004, but only began billing the Parks Department in 2009, over five years after he learned of the transfer and during the pendency of this lawsuit. The plaintiffs statement of uncontested material facts states:
“The Property is not connected to the District’s sewer facilities. See Nicolino Aff., at 1f 10, Exhibit 7; Complaint at H 12, Exhibit 1; Deposition Testimony of Benjamin Wright, employed by defendant Suffolk County Department of Public Works (‘DPW’), taken April 15, 2010 (‘Wright Dep.’), at Tr. 32, 74, Exhibit 10; Deposition Testimony of Martin Edward Clausen, employed by defendant DPW, taken April 29, 2010 (‘Clausen Dep.’), at Tr. 95, 102, Exhibit 11. “LIPA’s Property has never been connected to the District’s sewer facilities or any other sewer system within Suffolk County. See Nicolino Aff, at 1i 11, Exhibit 7; Complaint at 1i 13, Exhibit 1; Wright Dep., at Tr. 32, 74, Exhibit 10; Clausen Dep., at Tr. 95, 102, 99-101, Exhibit 11. *545 “LIPA has never used the District’s sewer facilities. See Wright Dep., at Tr. 32, 37, 74, 76, Exhibit 10; Clausen Dep., at Tr. 99-101, Exhibit 11.”
The defendants’ statement of uncontested material facts states: “The subject property generates sanitation waste (sewage) upon the property. See Exhibit ‘F.’ ”
Plaintiff’s counterstatement to defendants’ statement of uncontested material facts states: “LIPA disputes Paragraph 6 of Defendants’ Statement insofar as it states that the Property ‘generates sanitation waste (sewage) upon the property,’ whatever that means, but does not dispute that there is an on-site septic tank for disposal of sewage generated on the Property.” Exhibit F (annexed to defendants’ moving papers in opposition to plaintiffs motion and in support of defendants’ cross motion) is a transcript of the testimony of Walter Hoefer, assistant to the Chief of Staff of LIPA. Mr. Hoefer testified that there are two bathrooms at the power plant (at 12, 14).
Plaintiff has established by documentary evidence that the 4.81 acres is improved by two gas-fired electric generation units and an on-site septic tank for disposal of sewage from a bathroom within a small structure utilized in connection with the maintenance of the electric generation units.
On a motion for summary judgment, the court’s function is to decide whether there is a material factual issue to be tried, not to resolve it. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957].) A prima facie showing of a right to judgment is required before summary judgment can be granted to a movant. (Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]; Fox v Wyeth Labs., 129 AD2d 611 [1987]; Royal v Brooklyn Union Gas Co., 122 AD2d 132 [1986].) The plaintiff has made an adequate prima facie show of entitlement to summary judgment.
Once a movant has shown a prima facie right to summary judgment, the burden shifts to the opposing party to show that a factual dispute exists requiring a trial, and such facts presented by the opposing party must be presented by evidentiary proof in admissible form. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979].) Conclusory statements are insufficient. (Sofsky v Rosenberg, 163 AD2d 240 [1990], affd 76 NY2d 927 [1990]; Zuckerman v City of New York, 49 NY2d 557 [1980]; see Indig v Finkelstein, 23 NY2d 728 [1968]; Werner v Nelkin, 206 AD2d 422 [1994]; Fink, Weinberger, Fredman, Berman & Lowell v Petrides, 80 AD2d 781 [1981], appeal dismissed 53 *546 NY2d 1028 [1981]; Jim-Mar Corp. v Aquatic Constr., 195 AD2d 868 [1993], lv denied 82 NY2d 660 [1993].)
In opposition to the within motion and in support of the cross motion, defendants argue that although the sewer charge is not an assessment, LIPA receives a direct benefit thereby validating the charges. The Appellate Division, Second Department, in Long Is. Power Auth. v Anderson (67 AD3d 652, 653 [2009]) in reversing this court’s decision and order dated July 25, 2008 stated that
“[i]t is undisputed that the plaintiff’s property is not located within the Suffolk County Sewer Districts (hereinafter the Sewer Districts), and that the disputed sewer charges were imposed upon the property pursuant to a contract between the Sewer Districts and the previous owner of the property. Accordingly, the sewer charges are not assessments, and the plaintiff, despite its statutory exemption from liability for assessments, may ultimately be responsible for these fees. (cf. City of New York v Long Is. Power Auth., 14 AD3d 642 [2005]).” (Emphasis added; see also LIPA Act [Public Authorities Law] §§ 1020-a, 1020-p [2]; Public Authorities Law § 1685; Matter of New York State Dormitory Auth. v Board of Trustees of Hyde Park Fire & Water Dist., 86 NY2d 72 [1995]; Elmwood-Utica Houses v Buffalo Sewer Auth., 65 NY2d 489 [1985].)
Defendants also argue a finding should be made in favor of the defendants under the “balancing of public interests” test. Defendants’ position is misplaced. This test was adopted by the Court of Appeals in Matter of County of Monroe (City of Rochester) (72 NY2d 338 [1988]), and contemplates a thorough examination and a balancing of the several enumerated factors deemed necessary and material by the Court of Appeals in determining the competing interests of municipalities with respect to the land use project at issue in an action. In that case, the Court of Appeals held that the Rochester City Code and permit requirements did not apply to the County of Monroe’s expansion of a county airport situated within the city limits.
In City of New York v Long Is. Power Auth. (14 AD3d 642, 643 [2005]) the court concluded that LILCO, the predecessor to LIPA, had the responsibility to pay all costs associated with removal, protection and relocation work for defendants’ utility equipment during the municipal public works projects. In City of New York v Long Is. Power Auth. (supra), the utility was *547 responsible for rectifying any burden it may have imposed on the City.
The record before the court demonstrates that the defendants did not bill OMH, SCCC, the Wingate Inn or NYPA for sewer service until after they actually connected to the District’s sewer system and sewage began to flow into the District’s sewer system. The District’s practice and procedure was to bill subsequent owners of the part of the subject property only after they connected to the District’s sewer facilities. The plaintiff asserts that it is incredulous that the District began billing LIPA in 2005, retroactive to 2003, based upon the unilateral decision of an accountant in DPW’s offices, who had nothing to do with negotiating or drafting the 1991 Connection Agreement, did not understand what, if any, methodology should be applied if more than one user was located on an individual parcel and who only “assumed” LIPA, a nonuser, was subject to the 1991 Connection Agreement because the tax records showed that LIPA owned a portion of one of the four parcels formerly known as the Pilgrim State premises. Moreover, plaintiff contends the huge sums sought to be collected from LIPA are all the more improper when considering subsection (ii) (b) of schedule C, which provides that the ad valorem charge should be based on the “assessed value of square footage and acreage of the use” of the excess capacity reserved for those other than OMH. Moreover, according to Mr. Clausen, the ad valorem charges imposed on LIPA are based on an ad valorem assessment calculated by and received from the Town of Islip Assessor’s Office, namely, $16,715,000 which is the value of LIPA’s land and the improvements. The Assessor’s Office was apparently not aware, until recently, that the assessed value it placed on LIPA’s property was being used by the District as a basis for imposing an ad valorem sewer use charge on LIPA. The Town of Islip Assessor produced a “post-it” upon which he had written “1 m pr megawatt” and explained that he reached the assessed value of LIPA’s property by multiplying the 79.9 megawatts by an estimated $1 million per megawatt and then applied the Town of Islip equalization rate to arrive at $16,715,000 as the assessed value. (See deposition testimony of Ronald F. Devine, Jr., Town of Islip Assessor, tr at 9-11, 20, annexed as exhibit 25 to plaintiffs motion.) A copy of the handwritten note ostensibly providing the basis for calculating the assessed value of LIPA’s property is annexed as exhibit 26 to plaintiff’s motion. The Town of Islip lists the subject property as tax exempt on its tax *548 rolls and LIPA has voluntarily made payments in lieu of taxes in accordance with a PILOT agreement with the Town of Islip.
After lengthy discovery, including depositions, other than the statement by Mr. Hoefer that there are two bathrooms at the power plant with an on-site septic tank for disposal of sewage generated on the property, there is no documentary evidence before the court to refute plaintiffs assertion that the property is not connected to, and LIPA does not use or benefit from, the District’s sewer facility. (See Chelsea Piers Mgt. v Chapin, 7 AD3d 389 [1st Dept 2004]; Rock Hill Sewerage Disposal Corp. v Town of Thompson, 27 AD2d 626 [3d Dept 1966].) Defendants have cited no statute or case for authority to allow the defendants to impose a special ad valorem levy on the plaintiff simply because the plaintiff installed a septic tank on the premises and is not hooked up to the sewer system.
Defendants are precluded from imposing ad valorem sewer assessments on LIPA. The charges or fees levied against LIPA in connection with the subject property are unlawful and improper under statutory and common law. The plaintiffs application for a mandatory injunction is granted only to the extent that in the future the defendants are precluded from imposing a special ad valorem levy on LIPA for which LIPA receives no benefit. (See New York Tel. Co. v Supervisor of Town of Oyster Bay, 4 NY3d 387 [2005]; see also Applebaum v Town of Oyster Bay, 176 AD2d 773 [2d Dept 1991].) The balance of the plaintiffs summary judgment motion is granted.
Defendants’ cross motion for summary judgment is denied.